COURT OF APPEALS OF VIRGINIA

Present:  Judges Russell, Friedman and Callins
Argued at Salem, Virginia

**PUBLISHED**

JUSTIN THOMAS MEADE

v.      Record No. 0651-21-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE WESLEY G. RUSSELL, JR.
MAY 17, 2022

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
Onzlee Ware, Judge

J. Thomas Love, Jr. (Office of the Public Defender, on briefs), for
appellant.

Craig W. Stallard, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

The trial court convicted appellant, Justin Thomas Meade, of maliciously shooting at an

occupied building.  On appeal, Meade contends that the evidence was insufficient to support his

conviction because he fired his gun in self-defense.  He also maintains that the trial court

erroneously rendered inconsistent verdicts by convicting him of maliciously shooting at an occupied

building while acquitting him of attempted murder, attempted malicious wounding, and two related

firearm charges.  Finally, Meade asserts that the evidence was insufficient to support his conviction

because he fired his weapon in the heat of passion.  For the following reasons, we affirm the

judgment of the trial court.

## BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial."  *Gerald v.*

*Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381

(2016)).  Accordingly, we regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence.  *Id.* at 473.

On October 25, 2020, Meade and his fiancée, Kaitlyn Higdon, stopped at a Days Inn when his car overheated.  Meade backed into a parking space directly in front of the motel, exited the vehicle, and opened the hood.  While he was working on the car, Meade saw several people circulating nearby in the parking lot, including a man later identified as David Hunter Wills.  Meade noticed Wills had a handgun at his waist.  Meade retrieved a firearm from his car and placed it in his waistband before returning to the front of his vehicle.

Shortly thereafter, Wills approached and placed his gun on top of Meade's car; he then confronted Meade, accusing him of stealing.  After Wills exchanged words with Meade in the parking lot, one of Wills' companions handed Wills his gun.  Despite having his gun, Wills began to assault Meade with his fists.  Meade broke free from Wills and fled toward the motel with Wills and his companions in pursuit.  As Meade circled back into the parking lot toward his car, the group overtook him, knocked him to the ground, and repeatedly hit and kicked him as he lay on the pavement.

Both Meade and Wills held their guns in their hands during the altercation.  When a gun fired, the group scattered, and Wills ran in the direction of the motel.[1]  Meade stood in the parking lot and pointed his gun at Wills, but suddenly a car sped toward Meade, struck him, and knocked him to the pavement.  Meade immediately rose to his feet, turned, and pointed his gun at the car as it left the parking lot.  As he did, Wills took cover behind a parked vehicle in front of the motel and pointed his gun at Meade.  According to Meade and Higdon, Wills fired at Meade, prompting Meade to "duck" and crouch behind the passenger side of his car.

---

[1] Meade testified that he was not certain whether the gunshot that caused people to scatter was from his gun or another gun.

When Meade was still behind his car, Wills was "running away" toward his motel room. Just as Wills reached the motel room door, Meade stood and fired his gun in Wills' direction. After Wills entered the motel room, Meade fired a second time in the direction of the room.

Meade testified that his intention in firing the two shots toward Wills was not to strike, injure, or kill him, but rather, "[t]o get him away from me." Meade conceded that, at the time he fired the shots, Wills was "away" from him.

With his gun aimed at the motel room that Wills had entered, Meade entered his car through the driver's door. As Meade began to drive away, Wills exited the motel room and shot at Meade's car three times, striking the driver's door; however, Meade was able to drive away from the scene.

Neither Meade nor Higdon notified the police. Later, when Detective Hughes called Meade and attempted to interview him about the incident, Meade terminated the call without offering an explanation of the events.

The entire incident, which occurred during daylight hours, was captured from two angles on motel surveillance cameras. The video footage was admitted into evidence at Meade's trial for attempted murder, attempted malicious wounding, two related firearm charges, and maliciously shooting at an occupied building.

At trial, Meade moved to strike all of the charges at the conclusion of the Commonwealth's evidence and at the conclusion of all of the evidence. In support of his motions to strike, Meade asserted that he fired his gun in self-defense and that the evidence failed to prove malice because he acted in the heat of passion. Meade stressed that, when he fired his gun in the direction of the motel, he had just been attacked, struck by a vehicle, and had a gun pointed at his head. The Commonwealth responded that malice could be inferred from the use of a deadly weapon and emphasized that, when Meade fired at Wills, Wills was retreating into the motel. The Commonwealth asserted that Wills was already inside the motel when Meade fired his second shot,

and thus, no longer posed an immediate threat. The Commonwealth maintained that Meade was "taking out his anger at Mr. Wills and firing off rounds at him." The trial court denied the motions.

Ultimately, the trial court convicted Meade of maliciously shooting at an occupied building and acquitted him of attempted murder, attempted malicious wounding, and the related firearm charges. The trial court found that Meade shot at Wills as he was running into the motel room.

Meade later moved to set aside his conviction, asserting that the trial court's verdicts were inconsistent because the basis for his acquittals was a finding that he had acted in self-defense when he fired at Wills. He stressed that "the same bullets that were fired in self-defense at the alleged victim . . . were nevertheless the basis for the conviction for shooting at the occupied dwelling." The trial court denied Meade's motion, emphasizing that it did not acquit Meade of the other charges on self-defense grounds. To the contrary, the trial court noted that it had rejected Meade's claim of self-defense but nonetheless had concluded that the evidence was insufficient to convict Meade of the charges other than the malicious shooting at an occupied building.[2] The trial court expressly found that, when Meade fired his gun at Wills, "the threa[t] of danger . . . was over" and that Meade was "angry . . . and he maliciously fired into an occupied" building. This appeal followed.

## ANALYSIS

### I. Standard of review

"The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." *Wood v. Commonwealth*, 57 Va. App. 286, 292

---

[2] The trial court did not specify how the evidence was insufficient to support convictions for attempted murder or attempted malicious wounding. The trial court's acquittal of Meade on those charges negated a necessary element of the derivative use of a firearm charges, explaining the trial court's acquittal of Meade on those charges.

- 4 -

(2010) (quoting *Martin v. Commonwealth*, 4 Va. App. 438, 443 (1987)). Accordingly, we do "not ask . . . whether [we] believe[] that the evidence at the trial established guilt beyond a reasonable doubt[,]" but rather, viewing the evidence in the light most favorable to the prevailing party, we ask "whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)).

Such deference stems, in part, from the trial court's "opportunity to observe the testimony and demeanor of all witnesses." *Lopez v. Commonwealth*, 73 Va. App. 70, 81 (2021). We long have recognized that a "trial judge who views the witnesses as their testimony is given is in the better position to evaluate the evidence than an appellate court which reviews only a cold record." *Harris v. Woodrum*, 3 Va. App. 428, 433 (1986). Accordingly, "[t]he credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999).

Our deference, however, is not limited solely to matters of witness credibility. We owe deference to the trial court's interpretation of all of the evidence, including video evidence that we are able to observe much as the trial court did. Such deference stems not from the trial court being in a superior position to view the video evidence but from the difference in our respective roles. As factfinder, a trial court views video and other evidence to determine what it believes happened; we, on appellate review, view video evidence not to determine what we think happened, but for the limited purpose of determining whether any rational factfinder could have viewed it as the trial court did.

Our deference to the factual determinations of the trial court, however, does not extend to its resolution of legal questions. "We review questions of law, and mixed questions of law and

fact, utilizing a *de novo* standard of review." *Parish v. Commonwealth*, 56 Va. App. 324, 329 (2010) (quoting *Dunaway v. Commonwealth*, 52 Va. App. 281, 299 (2008)).

## II. Self-defense

Meade contends that he is innocent of maliciously shooting at an occupied building because the shots he fired at the motel room were fired in self-defense. The trial court explicitly rejected Meade's claim that he fired the shots in self-defense. Meade asserts that this was error, arguing that the evidence, even when viewed in the light most favorable to the Commonwealth, establishes that he acted in self-defense as a matter of law. We disagree.

"Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt." *Hughes v. Commonwealth*, 39 Va. App. 448, 464 (2002) (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)). To be entitled to use potentially lethal force in self-defense, a defendant "must reasonably fear death or serious bodily harm[.]" *McGhee v. Commonwealth*, 219 Va. 560, 562 (1978). Whether the danger is reasonably apparent is judged from the viewpoint of the defendant at the time of the incident. *Hines v. Commonwealth*, 292 Va. 674, 679 (2016). Even if reasonable, a generalized fear of potential harm due to actions occurring in the past is insufficient, *Commonwealth v. Sands*, 262 Va. 724, 730 (2001); rather, a "defendant must . . . show that he was in *imminent* danger of harm, that is, a showing of an overt act or other circumstance that affords an *immediate* threat to safety." *Hines*, 292 Va. at 679 (emphasis added).

"Whether an accused proves circumstances sufficient to create a reasonable doubt that he acted in self-defense is a question of fact." *Bell v. Commonwealth*, 66 Va. App. 479, 486 (2016) (quoting *Smith*, 17 Va. App. at 71). Accordingly, "[a] trial judge's factual findings" regarding a claim of self-defense "will not be disturbed on appeal unless plainly wrong or without evidence to support them." *Smith*, 17 Va. App. at 71.

In rejecting Meade's claim of self-defense, the trial court concluded that, at the time he fired the shots at the motel room, Meade did not reasonably believe he was faced with an "imminent danger" amounting to "an immediate threat to [his] safety." *Hines*, 292 Va. at 679. From its view of the video evidence, the trial court concluded that, prior to Meade firing the shots, Wills was retreating into the motel room, and therefore, was not an immediate threat. Such a view of the video evidence finds support in Meade's trial testimony in which he conceded that Wills was "running away" and that Wills was "away" from Meade when Meade fired the shots. Taken together, the video evidence and Meade's testimony provide some "evidence to support" the trial court's conclusion on imminent harm and immediate threat, and therefore, we are bound by that conclusion. *Smith*, 17 Va. App. at 71.

Accepting that Meade reasonably believed that Wills posed such a threat when he first approached Meade does not compel a different conclusion. As the Supreme Court has made clear, the fact that a person may represent an imminent harm and immediate threat at one point in a confrontation does not require the conclusion that he or she retains that status throughout an encounter. *See Avent v. Commonwealth*, 279 Va. 175 (2010). In *Avent*, the defendant claimed both self-defense as a matter of law, *id.* at 199, and, in the alternative, that he was at least entitled to a jury instruction on the issue of self-defense. *Id.* at 202. The Supreme Court rejected both arguments. In addressing the jury instruction issue, the Supreme Court noted that, viewed in the light most favorable to Avent as the proponent of the instruction, the evidence established that the victim was the initial aggressor but that, over the course of the encounter, the victim was placed in a position where he no longer gave rise to a reasonable apprehension of posing an immediate threat of imminent harm. *Id.* at 203. As a result, although self-defense may have been justified at the beginning of the encounter, Avent "forfeited his right to a self-defense jury

instruction because . . . he was not in reasonable fear of death or great bodily harm when he [ultimately] killed" the victim. *Id.* at 202-03.

Here, although a rational factfinder could conclude that Wills' retreat by "running away" and successful attempt to get "away" from Meade did not eliminate the possibility of Meade forming a reasonable apprehension of Wills posing an immediate threat of imminent harm, a rational factfinder also could conclude otherwise. Viewing the evidence in the light most favorable to the Commonwealth, we simply cannot say that a reasonable factfinder could not conclude that Meade did not have a reasonable apprehension of Wills, who was running away and seeking refuge in the motel room, posing an immediate threat of imminent harm when he fired the shots.[3] Accordingly, we conclude that the trial court did not commit reversible error in rejecting Meade's claim of self-defense.

### III.  Inconsistent verdicts

Meade next asserts that the trial court's decision to acquit him of attempted murder, attempted malicious wounding, and the use of a firearm in the commission of those two attempts required the trial court also to acquit him of maliciously shooting at an occupied building. He argues that the conviction represents an impermissible "inconsistent verdict[]" requiring us to reverse the conviction.

Although juries generally are allowed to reach inconsistent verdicts in criminal cases, *McQuinn v. Commonwealth*, 298 Va. 456, 459-60 (2020), trial courts conducting bench trials

---

[3] Similarly, the fact that *after* Meade fired the shots Wills emerged from the motel room and returned fire does not compel a different result. Although a rational factfinder could consider this evidence and conclude that Wills' actions after Meade fired the shots provided some justification for Meade having had a reasonable apprehension of imminent danger prior to firing the shots, the evidence does not require such a conclusion. Accordingly, we cannot say that the factfinder erred in rejecting the claim of self-defense.

generally are not.[4]  *Wandemberg v. Commonwealth*, 70 Va. App. 124, 139 (2019).  As we

previously have explained,

> [C]onvictions based on inconsistent jury verdicts are tolerated
> because of the singular role of the jury in the criminal justice
> system. . . .  [T]here is a reluctance to interfere with the results of
> unknown jury interplay, at least without proof of actual
> irregularity. . . .  [I]nconsistencies may be the product of lenity,
> mistake, or a compromise to reach unanimity, and . . . the continual
> correction of such matters would undermine the historic role of the
> jury as arbiter of questions put to it.  In the present case, however,
> the inconsistent verdicts were rendered by a judge, not by a jury.
> [The above rationale] does not justify inconsistent verdicts from
> the trial judge.

*Akers v. Commonwealth*, 31 Va. App. 521, 531 (2000) (alterations in original) (internal quotation

marks and citations omitted).

"Verdicts or convictions are inconsistent when the essential elements in the count

wherein the accused is acquitted are identical and necessary to proof of conviction on the guilt

count."  *Wandemberg*, 70 Va. App. at 139 (quoting *Akers*, 31 Va. App. at 528 n.3).  Thus, to

determine if the trial court impermissibly rendered inconsistent verdicts in this case, we must

identify the elements of the offenses for which he was acquitted and compare them to the

elements of the offense of which he was convicted.[5]  Identifying the elements of the offenses

---

[4] We have recognized a limited exception to the general prohibition where the trial court provides "a valid explanation on the record for the [inconsistent] verdicts."  *Cleveland v. Commonwealth*, 38 Va. App. 199, 204 (2002).  In *Cleveland,* we upheld the seemingly inconsistent verdicts because the trial court made clear on the record that the evidence was sufficient to support conviction on either of the two charges, but had acquitted Cleveland of one of them in an "act of lenity[.]"  *Id.*

[5] Perhaps the most obvious example of inconsistent verdicts occurs when a trial court acquits a defendant of a predicate offense, such as attempted murder or attempted malicious wounding, but convicts him or her of associated compound offenses, such as use of a firearm in the commission of attempted murder or attempted malicious wounding.  Here, when the trial court acquitted Meade of attempted murder and of attempted malicious wounding, it was required also to acquit him of the associated use of a firearm charges.  *See Akers*, 31 Va. App. at 532.  The trial court did so.

presents a legal question that we address *de novo*. *Massie v. Commonwealth*, 74 Va. App. 309, 319 (2022).

The trial court acquitted Meade of both attempted murder and attempted malicious wounding.[6] As pertinent here, both crimes contain elements requiring that the defendant possess a specific intent to kill or injure. *See Coles v. Commonwealth*, 270 Va. 585, 590 (2005) (holding that "a person must have the specific intent to kill in order to be guilty of an attempt to commit murder"); *Moody v. Commonwealth*, 28 Va. App. 702, 706 (1998) (holding that to be guilty of attempted malicious wounding the defendant must have acted with a "specific intent to maim, disfigure, disable or kill").

In contrast, Code § 18.2-279 contains no such intent requirement. Specifically, as pertinent here, Code § 18.2-279 provides that "[i]f any person . . . maliciously shoots at . . . any . . . building when occupied by one or more persons, whereby the life or lives of any such person or persons may be put in peril, the person so offending is guilty of a Class 4 felony."[7] From this language, it is clear that "the offense as defined by the statute is not a specific intent crime; rather, it is a general intent offense." *Fleming v. Commonwealth*, 13 Va. App. 349, 354 (1991). As the Supreme Court has observed, "the statute is meant to prohibit unlawful conduct, whether malicious or merely criminally reckless, which has the potential to endanger the lives of persons inside occupied buildings, *without regard to the shooter's actual motive or intent in unlawfully discharging a firearm*." *Ellis v. Commonwealth*, 281 Va. 499, 506 (2011) (emphasis added). The lack of a specific intent element represents "a legislative declaration that human lives may

---

[6] It is well established that "[a]n attempt to commit a crime is composed of the intent to commit it and a direct but ineffectual act done towards its commission." *Coles v. Commonwealth*, 270 Va. 585, 589 (2005).

[7] On appeal, Meade does not challenge that the evidence established he knowingly fired at an occupied building or that lives were endangered as a result.

be endangered when a deadly weapon is maliciously discharged *at or against* a building occupied by people[,]" *Dowdy v. Commonwealth*, 220 Va. 114, 117 (1979), and therefore, the statute is violated by the act of shooting at or in an occupied building even if a defendant does not specifically intend for the bullets fired to strike any individual who is occupying the building, *Strickland v. Commonwealth*, 16 Va. App. 180, 182 (1993) (affirming conviction for violation of Code § 18.2-279 despite the fact that the shot was not fired at a person, but rather, was fired into the ceiling because of "[t]he possibility that the bullet might have hit a metal part or solid object in the ceiling and ricocheted[,]" and thus, potentially endangered occupants of the building).

Because attempted murder and attempted malicious wounding contain a specific intent to injure or kill element and maliciously shooting at an occupied building does not, "the essential elements" of the offenses are not "identical[.]" *Wandemberg*, 70 Va. App. at 139 (quoting *Akers*, 31 Va. App. at 528 n.3). As a result, there is nothing inherently inconsistent about verdicts that acquit a shooter of attempted murder and attempted malicious wounding, but convict him or her of maliciously shooting at an occupied building in violation of Code § 18.2-279.

The facts of this case amply demonstrate the point. At trial, Meade was asked why he fired the shots at Wills. He gave as his reason not that he intended to kill or injure Wills, but rather, that his intention was "[t]o get [Wills] away from me." If accepted as true by the factfinder, the statement is sufficient to negate the specific intent to injure or kill necessary to support convictions for attempted murder and attempted malicious wounding. In fact, the trial court was required to acquit Meade of attempted murder, attempted malicious wounding, and the associated use of a firearm charges if it credited his testimony regarding his intention.

Conversely, Meade's statement regarding his intention did not compel an acquittal on the malicious shooting at an occupied building. Not only does the statement not negate an element of the offense, it is irrelevant to whether the offense was committed. *Ellis*, 281 Va. at 506;

- 11 -

*Strickland*, 16 Va. App. at 182. Accordingly, there is not a fatal inconsistency between the trial court's acquittals of Meade on the charges of attempted murder, attempted malicious wounding, and the use of a firearm in the commission of those two attempts and its conviction of him for maliciously shooting at an occupied building in violation of Code § 18.2-279.

IV. Malicious versus unlawful shooting at an occupied building

In his final assignment of error, Meade argues that the trial court erred in convicting him of maliciously shooting at an occupied building as opposed to the lesser-included offense of unlawfully shooting at an occupied building.[8] Specifically, he contends that the evidence established that, at a minimum, he acted under the heat of passion, precluding a finding that he acted maliciously.[9]

The Supreme "Court has long defined malice as 'the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.'" *Watson-Scott v. Commonwealth*, 298 Va. 251, 255-56 (2019) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). Malice may exist alongside and arise from "anger, hatred[,] and revenge" as well as any other "unlawful and [unjustified] motive." *Id.* at 256 (quoting *Martin v. Commonwealth*, 184 Va. 1009, 1015 (1946)). "Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any or without great provocation." *Fletcher v. Commonwealth*, 72 Va. App. 493, 507 (2020) (quoting *Branch v. Commonwealth*, 14 Va. App. 836, 841 (1992)). It "may be inferred from the

---

[8] As noted above, Code § 18.2-279 defines maliciously shooting at an occupied building as a "Class 4 felony." The statute further provides that "[i]f any such [shooting] be done unlawfully, but not maliciously, the person so offending is guilty of a Class 6 felony[.]"

[9] As he has throughout, Meade maintains that he was entitled to an acquittal on all charges, including the conviction for violating Code § 18.2-279. The argument in his final assignment of error is made in the alternative, in the event his primary arguments maintaining his entitlement to an acquittal are rejected. We do not read this alternative argument as in any way waiving his primary argument that he is entitled to an acquittal on all charges.

'deliberate use of a deadly weapon unless, from all the evidence, [there is] reasonable doubt as to whether malice existed.'" *Id.* (alteration in original) (quoting *Strickler v. Commonwealth*, 241 Va. 482, 495 (1991)). Critically, the existence or absence of "malice 'is a question of fact to be determined by'" the factfinder. *Id.* (quoting *Long v. Commonwealth*, 8 Va. App. 194, 198 (1989)).

In contrast to the deliberate mind required for malice, "[h]eat of passion refers to the *furor brevis* which renders a man deaf to the voice of reason." *Rhodes v. Commonwealth*, 41 Va. App. 195, 200 (2003) (quoting *Caudill v. Commonwealth*, 27 Va. App. 81, 85 (1998)). "Malice and heat of passion are mutually exclusive; malice excludes passion, and passion presupposes the absence of malice." *Lynn v. Commonwealth*, 27 Va. App. 336, 355 (1998) (quoting *Barrett v. Commonwealth*, 231 Va. 102, 106 (1986)), *aff'd*, 257 Va. 239 (1999). Malice and heat of passion cannot exist simultaneously because, unlike malice, the heat of passion requires a person "to act on impulse without conscious reflection." *Rhodes*, 41 Va. App. at 200 (quoting *Graham v. Commonwealth*, 31 Va. App. 662, 671 (2000)). "[W]hether the accused acted in the heat of passion is a question of fact[.]" *Miller v. Commonwealth*, 5 Va. App. 22, 25 (1987).

In convicting Meade of maliciously shooting at the motel room, the trial court expressly found that he acted with malice and not under the heat of passion. Because this represents a factual finding of the trial court, we are bound by the conclusion "unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." *Wood*, 57 Va. App. at 292 (quoting *Martin*, 4 Va. App. at 443).

In arguing that he acted under the heat of passion, Meade raises multiple potential provocations. He notes that, prior to firing the two shots at the motel room, he "was beaten by a group of individuals, struck by a car[,] and fired upon[.]" These factors certainly could allow a

- 13 -

rational factfinder to conclude at trial that, when Meade fired the shots, he did not possess a "deliberate mind[,]" *Fletcher*, 72 Va. App. at 507; however, on appeal, Meade has a greater task, for he must establish that no "rational trier of fact could have found" that he acted with malice, *Secret*, 296 Va. at 228 (quoting *Pijor*, 294 Va. at 512).

Here, the evidence includes more than just the events cited by Meade. The evidence includes Meade's testimony explaining that he did not shoot toward the motel room with the intention to harm Wills or anyone else, but rather, fired the gun in Wills' direction in an attempt "[t]o get [Wills] away from me." Accepting this statement as true, Meade's decision to fire was not the result of rage or passion, but represented a considered plan. The statement reflects both thought and calculation, and therefore, is sufficient to provide a reasonable basis for a factfinder to conclude he fired the shots with a "deliberate mind[,]" *Fletcher*, 72 Va. App. at 507.

Because there is at least some evidence to support the trial court's determination that Meade acted with malice, we may not reverse that finding on appeal. *Wood*, 57 Va. App. at 292 (quoting *Martin*, 4 Va. App. at 443). Accordingly, the trial court did not commit reversible error in convicting Meade of maliciously shooting at an occupied building.

CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court. In doing so, we reiterate the limited role of an appellate court. It is not for us "to say that the evidence does or does not establish [Meade's] guilt beyond a reasonable doubt because as an original proposition [we] might have reached a different conclusion." *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)). We review the conclusions that the factfinder drew from the evidence "with the highest degree of appellate deference[,]" *Pijor*, 294 Va. at 512 (quoting *Bowman v. Commonwealth*, 290 Va. 492, 496 (2015)), and may reverse the judgment of the trial court only if those conclusions are "plainly wrong or without

evidence to support" them, Code § 8.01-680.  Because the question before this Court is not whether we would have convicted on the evidence presented, but "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt[,]" *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (internal quotation marks and citation omitted), we affirm the judgment of the trial court.

*Affirmed.*