COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Petty and Chafin
Argued at Richmond, Virginia

**PUBLISHED**

ERIC WILLIAM WANDEMBERG

v.      Record No. 0137-18-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE ROBERT J. HUMPHREYS
APRIL 2, 2019

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Lynn S. Brice, Judge

Gregory R. Sheldon (Bain Sheldon, P.L.C., on brief), for appellant.

Alice Anne Lloyd, Assistant Attorney General (Mark R. Herring,
Attorney General; Brittany A. Dunn-Pirio, Assistant Attorney
General, on brief), for appellee.

Following a bench trial, the Circuit Court of Chesterfield County (the "circuit court") convicted Eric William Wandemberg ("Wandemberg") of two counts of strangulation, in violation of Code § 18.2-51.6, two counts of misdemeanor assault and battery, in violation of Code § 18.2-57, misdemeanor "vandalism,"[1] in violation of Code § 18.2-137, and damaging a telephone line (hereinafter, "interfering with a 911 phone call"),[2] in violation of Code § 18.2-164(B). The circuit court sentenced Wandemberg to a total of fourteen years of

---

[1] Throughout the record and in the sentencing order, the circuit court consistently refers to the crimes of misdemeanor and felony property damage as "vandalism."

[2] The indictment charged that Wandemberg "did unlawfully destroy, deface, damage, a telephone . . . with the intent to prevent another person from summoning law-enforcement, fire or rescue services[.]" While the indictment cites to Code § 18.2-164(B), the descriptive text of the indictment narrows the factual allegation in the indictment to a violation of Code § 18.2-164(B)(2). See Purvy v. Commonwealth, 59 Va. App. 260, 268 (2011) (noting that "when the descriptive text of an indictment *narrows* the factual allegation, it limits the scope of the incorporation" of the contents of a statute by citation to the statute (emphasis in original)).

incarceration, with eight years and twenty-four months suspended.  The circuit court also ordered

Wandemberg to pay restitution to the victim's mother to fix a door that he damaged.  On appeal,

Wandemberg asserts the following two assignments of error:

> 1.  The [circuit] court erred by finding sufficient evidence to support each strangulation conviction in the absence of evidence of a bodily injury, as required by [Code §] 18.2-51.6.
>
> 2.  The [circuit] court erred by finding sufficient evidence to support a conviction for interfering with a 911 call where the trial court made a specific factual finding that it could not determine who damaged the phone.

## I.  BACKGROUND

The record reflects that Wandemberg and the victim were in a volatile romantic

relationship.  Over the course of several months, Wandemberg damaged property at the victim's

mother's home[3] and committed three instances of domestic violence, including two separate

incidents of strangulation.

The first domestic violence incident, as well as the first strangulation, occurred on June

24, 2016.  That day, Wandemberg arrived at the victim's home after finishing work.

Wandemberg and the victim did not live together, but Wandemberg occasionally stayed at her

home.  After arriving, Wandemberg woke the victim and told her to get out of bed.  They then

began arguing.  The argument escalated, and Wandemberg grabbed the victim by the throat,

started choking her, and threw her onto the bed.  Wandemberg continued to choke the victim

with his right hand, squeezing and pressing down on her neck.  Wandemberg repeatedly

threatened to kill the victim during this first assault, which lasted at least five minutes.

The victim described that Wandemberg would choke her, "let up after a couple of

minutes, and then he'd go right back at it.  He was yelling at the time."  The victim also testified

---

[3] During the time period relevant to this case, the victim lived at her mother's home.

- 2 -

that she could not breathe and felt pain. She further testified that when she attempted to call the police with her cell phone, Wandemberg took the phone from her and threw it against a window, causing it to break. The victim subsequently started banging on the window, "hoping [her] neighbor would see or come over." Wandemberg then punched the victim in her temple with a closed fist and started choking her again.

The first attack left the victim with a "knot" on her temple "about the size of a golf ball[.]" The victim also suffered "bad headaches," a black eye, and other bruising on her face. Her brother, Clinton Webber ("Webber"), explained that when he saw the victim on June 24, 2016, she "had a goose-egg-sized knot on her face and abrasions around the neck . . . . It looked like somebody had choked her." The victim's mother, Michelle Lilly ("Lilly"), also confirmed that when she saw the victim that same day, she had "some marks on her neck and a knot on her head."

Webber took the victim to the hospital a few hours later. During the hospital visit, however, the victim did not tell any medical personnel about the strangulation because she was pregnant, did not want the police to get involved, and "just wanted this to go away."

When interviewed about the incident by Officer Bechtold of the Chesterfield County Police Department, Wandemberg admitted that he and the victim got into "a tussle." Wandemberg claimed, however, that the victim became angry with him, threw her phone at him, and repeatedly hit his back. Wandemberg also claimed that when the victim threw her phone at him, the phone missed and hit the dresser, which caused it to break. Wandemberg also explained that he pushed the victim away with both of his hands, which caused the victim to fall and hit her head on the bathtub. Wandemberg alleged that he restrained the victim using both of his hands around her neck because she continued to chase him. Wandemberg also told Officer Bechtold that he remembered the victim having some scratches around her neck.

The second domestic violence incident occurred on December 15, 2016. That day, the victim was driving Wandemberg and Wandemberg told the victim that he had been cheating on her. The victim stopped the car and told Wandemberg to get out. Wandemberg refused to exit the car and then "backhanded" the victim and "clawed" her face. The victim explained that her face "looked like a cat had . . . crawled up on [her] face and clawed it."

In his interview with Officer Bechtold, Wandemberg admitted to getting into an altercation with the victim while she drove him to work. Wandemberg also admitted to backhanding the victim in the face, which "popped her lip." Wandemberg explained, however, that he only did so after the victim punched him in the face multiple times.

The third domestic violence incident, as well as the second strangulation, occurred in mid-January 2017. Wandemberg and the victim started arguing in the victim's bedroom. The argument then moved into the bathroom where Wandemberg threw the victim up against the wall and started choking her. She fell to the ground, got up, and then started screaming. Wandemberg subsequently dragged the victim from the bathroom to the closet by her hair and neck and then grabbed the victim by the throat, which caused the victim to fall backwards and hit her head on a box. At that point, Wandemberg got on top of the victim and straddled her, placed both hands on her neck, and began choking her.

The victim stated that Wandemberg choked her for so long that she could not breathe or speak, and her face and lips went numb. While the victim testified that she originally "was screaming and trying to get out[,]" she could not speak and "just had no fight left" by the end of the attack. Following the attack, the victim's neck hurt and she had a knot on her head.

Wandemberg admitted to Officer Bechtold that he got into a fight with the victim in mid-January 2017. Wandemberg also admitted to straddling the victim and putting both of his arms around the victim's neck to "restrain her," but claimed that the victim initiated the physical

violence. Wandemberg told Officer Bechtold that he held the victim on the ground "until she calmed down" and "was worn out."

On January 29, 2017, Wandemberg visited the victim's home unannounced. When the victim did not answer the front door, Wandemberg went around to the back of the house and kicked in the back door. As a result, both the door and wall sustained damage. Wandemberg proceeded to enter the residence yelling and screaming. Soon after, police arrested Wandemberg.

The victim first reported Wandemberg's attacks in mid-April 2017. On May 15, 2017, a grand jury issued indictments charging Wandemberg with multiple felonies and misdemeanors. The indictments included two counts of strangulation, two counts of assault and battery, abduction, interfering with a 911 phone call, felony property damage, and misdemeanor property damage. The felony property damage indictment resulted from the damage that Wandemberg inflicted upon the back door to the victim's mother's home, and the misdemeanor property damage indictment related to the victim's broken cell phone.

On September 28, 2017, a bench trial took place. At the conclusion of the Commonwealth's evidence, Wandemberg moved to strike the evidence as insufficient as a matter of law and argued that the Commonwealth failed to prove a bodily injury or wounding as required for a strangulation conviction. Wandemberg also argued that the Commonwealth failed to prove that he knowingly interfered with a 911 phone call. The circuit court denied Wandemberg's motion to strike. Wandemberg renewed his motion to strike at the conclusion of all of the evidence and incorporated his renewed motion into his closing argument.

The circuit court explained its findings before convicting Wandemberg of two counts of strangulation, two counts of misdemeanor assault and battery, misdemeanor property damage,[4] and interfering with a 911 phone call. Regarding the strangulation convictions resulting from the June 24, 2016 and mid-January 2017 incidents, the circuit court stated that it found the victim's testimony credible. The circuit court also found that Wandemberg's admissions to Officer Bechtold corroborated her testimony.

Regarding that June 24, 2016 incident, the circuit court found that the victim's injuries constituted the "physical manifestation required by the strangulation charge." The circuit court made a similar finding regarding the mid-January 2017 incident. According to the circuit court, "to hold someone by the neck, as [Wandemberg][5] demonstrated to the officer when he asked, placing two hands around the neck. And as you put it, leaning on her shoulder until she was worn out. If that's not the definition of strangulation, I'm not sure what is."

In rendering its judgments related to the charges against Wandemberg for misdemeanor property damage to the victim's cell phone and interfering with a 911 call, the circuit court restated the victim's testimony and Wandemberg's admissions to Officer Bechtold. The circuit court noted that the victim testified that Wandemberg threw her phone, resulting in its destruction. However, the circuit court also noted that Wandemberg told Officer Bechtold that the victim threw her phone. As a result, the circuit court found Wandemberg not guilty of

---

[4] The Commonwealth charged Wandemberg with felony property damage after Wandemberg damaged the door to the victim's mother's home. However, the circuit court only convicted Wandemberg of misdemeanor property damage on that charge.

[5] The transcript reflects that the circuit court stated "as *she* demonstrated to the officer when he asked[,]" not "as *Wandemberg* demonstrated to the officer when he asked[.]" However, the transcript and record do not reflect that the victim ever demonstrated how Wandemberg placed his hands around her neck. Rather, Officer Bechtold testified that Wandemberg demonstrated how he placed his hands around the victim's neck when Officer Bechtold interviewed Wandemberg about the domestic violence incidents.

destroying the victim's phone because "there's a dispute in that evidence that I can't resolve about the destruction of the cell phone." Immediately after, however, the circuit court stated "[a]s far as the 911 incident, I found [victim] very credible. And I find him guilty as charged on that misdemeanor." Wandemberg's counsel did not object when the circuit court issued its verdicts or file any post-trial motions concerning any inconsistency in the verdicts. This appeal follows.

## II. ANALYSIS

### A. Standard of Review

"When the sufficiency of the evidence to support a conviction is challenged on appeal, we must view the evidence in the light most favorable to the Commonwealth, the prevailing party at trial." Severance v. Commonwealth, 67 Va. App. 629, 647 (2017) (citing Kelly v. Commonwealth, 41 Va. App. 250, 254 (2003) (*en banc*)). This well-settled principle of appellate review "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" Camp v. Commonwealth, 68 Va. App. 694, 698 (2018) (quoting Parks v. Commonwealth, 221 Va. 492, 498 (1980)). Accordingly, the trial court's judgment will not be disturbed unless it appears from the evidence that such judgment "is plainly wrong or without evidence to support it." Christian v. Commonwealth, 59 Va. App. 603, 608 (2012) (citing Code § 8.01-680; Preston v. Commonwealth, 281 Va. 52, 57 (2011)).

### B. Strangulation

In his first assignment of error, Wandemberg argues that the circuit court erred in finding evidence sufficient to support either of his strangulation convictions. According to Wandemberg, the evidence failed to prove that the victim sustained a "bodily injury" with respect to each strangulation incident, as required by Code § 18.2-51.6.

- 7 -

Pursuant to Code § 18.2-51.6, "[a]ny person who, without consent, impedes the blood circulation or respiration of another person by knowingly, intentionally, and unlawfully applying pressure to the neck of such person resulting in the wounding or bodily injury of such person is guilty of strangulation[.]" Neither Code § 18.2-51 nor Code § 18.2-51.6 defines bodily injury. In Ricks v. Commonwealth, 290 Va. 470 (2015), however, our Supreme Court held that "bodily injury" within the scope of Code § 18.2-51.6 "is any bodily injury whatsoever and includes an act of damage or harm or hurt that relates to the body; is an impairment of a function of a bodily member, organ, or mental faculty; or is an act of impairment of a physical condition." Id. at 479. The Court refused to adopt a narrower definition of the term "bodily injury" because doing so "would lead to 'absurd results.'" Id. (quoting Meeks v. Commonwealth, 247 Va. 798, 802 (2007)). Additionally, the Ricks Court emphasized that "[t]o prove a bodily injury, the victim need not experience any observable wounds, cuts, or breaking of the skin. Nor must she offer proof of 'broken bones or bruises.'" Id. (quoting English v. Commonwealth, 58 Va. App. 711, 719 (2011)). "[I]nternal injuries [also] . . . fall within the scope of Code § 18.2-51.6." English, 58 Va. App. at 719; see also Ricks, 290 Va. at 478.

Our Supreme Court's decision in Ricks concerned the separate criminal appeals of two defendants—Ricks and Chilton. The Court affirmed the judgment against Ricks after finding that the evidence was sufficient to prove strangulation resulting in bodily injury. Id. at 479. Notably, the Supreme Court relied upon evidence that Ricks held the victim down with his hand upon her neck, which resulted in the victim being unable to yell, talk, or breathe during that time. Id. The attack also left the victim with a red mark on her neck. Id.

Turning to Chilton, our Supreme Court affirmed the Court of Appeals judgment in reversing Chilton's conviction. Id. at 479-80. Regarding that case, the Court held that "intentionally impeding the flow of oxygen to another person resulting in unconsciousness,

however brief, does constitute a bodily injury within the meaning of Code § 18.2-51.6." Id. at 480. Applying that interpretation of the statute to the facts of the case, however, the Supreme Court concluded that "[t]he Commonwealth's evidence was so minimal that it failed to establish that [the victim] suffered a bodily injury in the form of a loss of consciousness." Id. at 481.

Here, Wandemberg argues that the victim did not suffer any bodily injury within the meaning of Code § 18.2-51.6 during either the June 24, 2016 incident, or the incident in mid-January 2017. Regarding the June 24, 2016 incident, Wandemberg claims that the victim's testimony demonstrates that "she suffered no injury as a result of Wandemberg's action of choking her[.]" Wandemberg argues that even though victim suffered other injuries from the incident, "they were not the result of any choking, as required by the statute." Regarding the mid-January 2017 incident, Wandemberg claims that while the circuit court relied upon the victim's testimony and found that "her face and lips were numb and she could not breathe[,]" the circuit court "made no finding that there were any other injuries." Wandemberg also argues that the evidence does not show that the victim lost consciousness or had "any marks or other injuries as a result of [his] actions on either occasion."

Wandemberg's argument that the victim suffered no bodily injury during either strangulation incident is unsupported by the record. Similar to one of the victims in Ricks, the victim here testified that on June 24, 2016, Wandemberg squeezed and pressed down upon her neck with enough force to restrict her ability to breathe. While a brief restriction of a victim's ability to breathe standing alone may not be enough to constitute a bodily injury, the record reflects that the victim here also suffered abrasions around her neck. Consistent with the holding in Ricks, these physical consequences of Wandemberg's strangulation of the victim establish that Wandemberg caused the victim to suffer a bodily injury within the meaning of Code § 18.2-51.6. Therefore, with respect to Wandemberg's strangulation conviction resulting from the June 24,

- 9 -

2016 incident, we cannot say that the circuit court's judgment is either plainly wrong or without evidence to support it.[6]

As characterized by the circuit court, Wandemberg's actions during the mid-January 2017 incident constituted "the definition of strangulation." We agree. The record reflects that Wandemberg got on top of the victim, straddled her, placed both hands on her neck, and starting choking her. Wandemberg strangled the victim for so long that the victim's face and lips went numb, thus constituting an impairment of her physical condition. The victim also testified that her neck hurt and was red after the strangulation. Given our Supreme Court's broad definition of a bodily injury under Code § 18.2-51.6, ample evidence supports the finding that Wandemberg caused the victim to suffer bodily injuries. Therefore, the circuit court did not err in convicting Wandemberg for strangulation as a result of the mid-January 2017 incident.

## C. Interfering with a 911 Phone Call

In his second assignment of error, Wandemberg argues that the circuit court erred in finding evidence sufficient to support his conviction for interfering with a 911 phone call. Wandemberg notes that the circuit court "made a specific factual finding that it could not determine who broke [the victim's cell] phone." The circuit court subsequently acquitted Wandemberg of misdemeanor property damage. As a result of that acquittal, Wandemberg argues that the circuit court could not convict him of interfering with a 911 phone call, in violation of Code § 18.2-164(B)(2). According to Wandemberg, conviction under that statute required the Commonwealth to prove that he disabled or destroyed the victim's cell phone.

---

[6] In its brief to this Court, the Commonwealth "acknowledges that, in determining bodily injury caused by the June 24, 2016 strangulation, the [circuit] court relied on facts that were not in evidence when it stated that [the victim] testified that 'she felt dizzy as if she was going to faint, she was lightheaded.'" However, Wandemberg did not object to the circuit court's findings when the circuit court rendered its judgment or in a post-trial motion. Accordingly, any error assigned to that finding it is barred by Rule 5A:18. See Ohree v. Commonwealth, 26 Va. App. 299, 308 (1998).

As a preliminary matter, the Commonwealth observes that Wandemberg did not object to the circuit court's judgment or file any post-trial motion to set aside the verdict. Wandemberg, however, asks that this Court invoke the ends of justice exception to Rule 5A:18.

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." "'The ends of justice exception is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred." Holt v. Commonwealth, 66 Va. App. 199, 209 (2016) (*en banc*) (quoting Redman v. Commonwealth, 25 Va. App. 215, 220-21 (1997)). "[T]o show that a miscarriage of justice has occurred, thereby invoking the ends of justice exception, the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or *the record must affirmatively prove that an element of the offense did not occur*." Id. at 210 (emphasis added) (quoting Redman, 25 Va. App. at 221-22). "Therefore, in examining a case for miscarriage of justice, we do not simply review the sufficiency of the evidence under the usual standard, but instead determine whether the record contains affirmative evidence of innocence or lack of a criminal offense." Id. (quoting Flanagan v. Commonwealth, 58 Va. App. 681, 695 (2011) (internal quotation marks omitted)).

Given that the circuit court's findings affirmatively prove that an element of interfering with a 911 phone call did not occur, we agree that it is appropriate to apply the ends of justice exception and address the merits of Wandemberg's second assignment of error. Looking to the language of Code § 18.2-164(B)(2), a conviction under that statute unequivocally requires that the Commonwealth prove that a defendant "disabl[ed] or destroy[ed]" a device enabling "telephone or telegraph communication." Specifically, Code § 18.2-164(B) provides that

> [i]f any person, with the intent to prevent another person from
> summoning law-enforcement, fire, or rescue services:

- 11 -

1. Commits any act set forth in subsection A; or

2. Maliciously prevents or interferes with telephone or telegraph communication by *disabling or destroying* any device that enables such communication, whether wired or wireless, he is guilty of a Class 1 misdemeanor.

(Emphasis added). Therefore, to convict Wandemberg of interfering with a 911 phone call under Code § 18.2-164(B)(2), the Commonwealth was required to prove that Wandemberg disabled or destroyed the victim's cell phone—an element of the offense.

Before addressing the charge against Wandemberg for interfering with a 911 phone call, however, the circuit court found Wandemberg not guilty of misdemeanor property damage to the victim's cell phone. The relevant statute that the Commonwealth originally charged Wandemberg with violating, "Code § 18.2-137, makes it a crime to destroy, deface, or damage any property, real or personal." Cocke v. Commonwealth, 68 Va. App. 11, 16 (2017). That statute distinguishes between a felony and misdemeanor depending upon the amount of damage caused, with damage less than $1,000 constituting a misdemeanor. See Code § 18.2-137(B).

Reviewing the record, it is clear that the circuit court implicitly found that Wandemberg did not "destroy, deface, or damage" the victim's cell phone when it stated that it could not resolve conflicting evidence in the record. The victim testified that Wandemberg threw her phone against a window, causing it to break. Wandemberg, on the other hand, told Officer Bechtold that the victim threw her phone at him, which missed and struck a dresser. Nevertheless, after finding Wandemberg not guilty of misdemeanor property damage, the circuit court found Wandemberg guilty of interfering with a 911 phone call, in violation of Code § 18.2-164(B)(2). Referencing that charge, the circuit court stated "[a]s far as the 911 incident, I found [the victim] very credible. And I find [Wandemberg] guilty as charged on that misdemeanor."

- 12 -

The Commonwealth's theory of interference with the victim's ability to make a 911 call was dependent upon proof of Wandemberg's seizure and destruction of the victim's cell phone. Therefore, the circuit court's factual conclusion that the evidence did not establish that Wandemberg disabled or destroyed the victim's cell phone, as required by Code § 18.2-164(B)(2), renders the evidence in this case legally insufficient to support the circuit court's judgment on that charge.

"[A] trial court may not render inconsistent verdicts in the guilt phase of a bench trial." Commonwealth v. Greer, 63 Va. App. 561, 570 (2014) (citing Akers v. Commonwealth, 31 Va. App. 521, 528-32 (2000)). "Verdicts or convictions are inconsistent when the essential elements in the count wherein the accused is acquitted are identical and necessary to proof of conviction on the guilt count." Akers, 31 Va. App. at 528 n.3 (internal quotation marks and citation omitted). Nevertheless, we also recognize that a facially inconsistent judgment will be sustained "where a trial judge on the record explains an apparent inconsistency in the verdicts, and where the explanation shows that the trial court's action was 'proper' and that there was no 'unfairness.'" Id. at 532 n.5 (quoting Johnson v. State, 209 A.2d 765, 773 (Md. 1965)).

To convict Wandemberg of misdemeanor property damage and interfering with a 911 phone call, the Commonwealth was required to prove an identical element shared by each crime. Convicting Wandemberg of misdemeanor property damage required the Commonwealth to prove that Wandemberg destroyed, defaced, or damaged the victim's cell phone. See Code § 18.2-137. Similarly, convicting Wandemberg of interfering with a 911 phone call required the Commonwealth to prove that Wandemberg disabled or destroyed the victim's cell phone. See Code § 18.2-164(B)(2). While the circuit court implicitly found that Wandemberg disabled or destroyed the victim's cell phone in convicting him of interfering with a 911 phone call, it previously stated that it could not resolve an evidentiary dispute regarding who destroyed the

victim's cell phone.  As a result, the circuit court acquitted Wandemberg of misdemeanor property damage.  Without a sufficient explanation for these inconsistent verdicts, we reverse Wandemberg's conviction for interfering with a 911 phone call.

## III.  CONCLUSION

For the reasons previously stated, we affirm Wandemberg's strangulation convictions but reverse and dismiss his conviction for interfering with a 911 phone call.

_Affirmed in part, and reversed and dismissed in part._