COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Friedman, Callins and White
Argued at Salem, Virginia


NELSON O'NEAL DEWS, II

                                              MEMORANDUM OPINION* BY
v.        Record No. 0577-22-3               KIMBERLEY SLAYTON WHITE
                                                  MAY 2, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
J. Frederick Watson, Judge

David W. Shreve for appellant.

Tanner M. Russo, Assistant Attorney General (Jason S. Miyares,
Attorney General; Mason D. Williams, Assistant Attorney General,
on brief), for appellee.


Nelson O'Neal Dews challenges the sufficiency of the evidence supporting his

convictions for attempted rape, in violation of Code § 18.2-67.5, strangulation, in violation of

Code § 18.2-51.6, and assault and battery, in violation of Code § 18.2-57.  Specifically, he

argues that the victim's testimony was inherently incredible and that the victim did not suffer a

bodily injury within the meaning of Code § 18.2-51.6.  We affirm the trial court's judgment.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party [below]." *Poole v. Commonwealth*,

73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).  This

standard requires us to "discard the evidence of the accused in conflict with that of the

---

* This opinion is not designated for publication.  *See* Code § 17.1-413.

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn [from that evidence]." *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

Serenity Lambert testified that Dews messaged her on Snapchat around September 10, 2020,[1] asking if she wanted to "hang out." She and Dews had been friends for about three years and had had consensual sex in March 2020.[2] Lambert responded that they "could hang out as long as it was just that" and clarified that she did not want to have sex with Dews.

Dews drove Lambert to Dews' grandparents' house, where Dews was staying. Once in Dews' room, he began to "pull at [Lambert's] clothes trying to initiate sex." He successfully removed Lambert's sweatpants and began removing his own clothes even though Lambert "kept telling him no." Wearing only a t-shirt, Dews got on top of Lambert and pinned her to the bed with her arms above her head. Lambert could not remember if Dews had an erection but remembered him rubbing his penis against her through her underwear while she "kept telling him to stop and tried to fight him off." He continued doing so for a couple of minutes before stopping. Lambert speculated that he stopped because "he just got mad and gave up after [she] kept fighting." Lambert testified on cross-examination that Dews was "teasing" her and did not threaten her. When asked what she meant by "teasing," she responded, "I guess he thought that I wanted it, but I didn't."

---

[1] Lambert could not recall the exact date. Snapchat messages disappear after a certain amount of time.

[2] Lambert admitted that she had previously had consensual sex with Dews but could not recall the exact date.

After unsuccessfully trying to penetrate Lambert, Dews asked her why she "was being like that," to which Lambert responded that she did not want to have sex. Dews then placed his hands around her throat and "tried to strangle [her] and he did it twice." Lambert did not lose consciousness but testified that she felt dizzy, could not breathe very well, and that it felt like Dews cut off her air passage. Afterwards, he told her "that he hoped he didn't scare [her] but it just turned him on." Her "neck was red and just a little sore" for the next day. She admitted that she did not cry out for help during the incident nor seek medical attention. Lambert then put her clothes back on, and Dews drove her home. She told her friend Nicole Chittum about the incident when she got home but did not go to the police because she "was scared," "didn't know what would happen," and "didn't want to think about it again."

About five months later, the police interviewed Lambert while investigating a fight between Dews' brothers and Lambert's friend. During that interview, Lambert told the police about the September 2020 incident.[3] When she did so, she knew that Dews had been charged with the same crimes regarding another individual.

In his defense, Dews testified that Lambert was never at this grandparents' house in early September. He denied that he ever attempted to rape her. He denied that he strangled her.

In closing, Dews argued that Lambert's testimony was uncorroborated and unreliable because she did not report the incident when it happened, had a motive to fabricate her testimony based on the alleged fight between her friend and Dews' brothers, had prior consensual intercourse with Dews, and made several inconsistent statements during the investigation, such as initially telling the police that the incident happened in May 2020. Dews also argued that the Commonwealth failed to prove that Lambert suffered a bodily injury within the meaning of the

---

[3] Lambert told the first officer she spoke with that the event took place in May 2020 before telling a second officer that it took place in September.

strangulation statute. The trial court found Dews guilty of all counts, finding that "this case certainly does turn on the credibility of the witnesses." The court found Lambert's testimony to be credible and that "what she described happened actually happened." Regarding the strangulation charge, the court explained that the evidence showed that Dews' "hands went around [Lambert's] throat, she had difficulty breathing as a result and had red marks and soreness," which the court found sufficient to convict Dews of strangulation. The court sentenced Dews to fifteen years and twelve months' imprisonment with all but four years and four months suspended. Dews appeals.

## ANALYSIS

### I. Credibility

Dews challenges the sufficiency of the evidence underlying his convictions. He does not contend that Lambert's testimony, if credible, would be insufficient to support his attempted rape or assault and battery convictions. *See Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005) ("[A] conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim."). Rather, he argues that Lambert's testimony, which constituted the entirety of the Commonwealth's evidence, was inherently incredible. Specifically, he focuses on Lambert's delayed report, her asserted motive to fabricate, and various inconsistencies in her statements.

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support

for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

"[D]etermining the credibility of witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify." *Maldonado v. Commonwealth*, 70 Va. App. 554, 562 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "Thus, this Court must accept 'the trial court's determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently incredible."'" *Canada v. Commonwealth*, 75 Va. App. 367, 386 (2022) (quoting *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006)). "[W]e may only disturb the trial court's credibility determination if the evidence is 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Lopez v. Commonwealth*, 73 Va. App. 70, 84 (2021) (quoting *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald*, 295 Va. 469 at 487 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). Thus, "[t]he mere fact that a witness may have delayed in reporting knowledge of a case or given inconsistent statements during the investigation of a crime does not necessarily render the testimony unworthy of belief." *Juniper*, 271 Va. at 415. Instead, such circumstances are "appropriately weighed as part of the entire issue of witness credibility, which is left to the [fact finder] to determine." *Id.* (citing *Shelton v. Mullins*, 207 Va. 17, 22 (1966)).

Dews fails to meet the high burden of showing that Lambert's testimony was inherently incredible as a matter of law. First, although Dews characterizes Lambert's delayed report as

"unexplained," Lambert testified that she did not report the crimes to the police because she "was scared," "didn't know what would happen," and "didn't want to think about it again." The fact finder was entitled to consider this explanation and attribute to it such significance it deemed appropriate. *See Love v. Commonwealth*, 18 Va. App. 84, 90 (1994) (holding that the victim's seven-year delay in reporting abuse did not render her testimony inherently incredible); *see also Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991) (holding that "[t]he victim's youth, fright and embarrassment certainly provided the jury with an acceptable explanation for his" 14-month delay).

Second, Dews presented Lambert's alleged motive to fabricate to the trial court, which rejected it. A witness's potential bias is one circumstance that "is appropriately weighed as part of the entire issue of witness credibility, which is left to the [fact finder] to determine." *Juniper*, 271 Va. at 415. The trial court could reasonably reject Dews' allegation of bias based on an incident with extremely vague facts that did not directly involve Dews or Lambert.

Third, Dews asserts that Lambert's statements were replete with inconsistencies. These alleged inconsistencies, which primarily relate to Lambert's inability to remember the dates on which certain events occurred and do not relate to the essential elements of any of the offenses,[4]

---

[4] Several of the asserted inconsistencies are not inconsistencies at all. For example, Dews asserts that "[t]here was much confusion as to how she was dressed" and that "[s]he testified that Mr. Dews tried to touch his penis to her vagina through her underwear but yet said she was wearing sweatpants." Lambert testified that she was wearing sweatpants in response to the question, "You said he got your pants off but what kind of pants were you wearing?" Lambert's testimony was therefore clear that she was not wearing pants by the time Dews attempted to penetrate her. As another example, Dews notes that Lambert never sought medical attention. That is not an inconsistency, either; Lambert never claimed to have done so and her decision not to do so is consistent with her testimony of having sustained only a red, sore throat. Dews also argues Lambert's inability to recollect whether his penis was erect as additional evidence of her incredibility. Whether Dews was erect, however, is not an element of either offense and Lambert's inability to recall the status of his erection does not render her testimony inherently incredible.

do not render her testimony "so contrary to human experience as to render it unworthy of belief." *See Lopez*, 73 Va. App. at 84.

Finally, none of these issues in combination rendered Lambert's testimony inherently incredible. "When the law says that it is for triers of the facts to judge the credibility of a witness, the issue is not a matter of degree. So long as a witness deposes as to facts [that], if true, are sufficient to maintain [the] verdict," and "[i]f the trier of the facts sees fit to base the verdict upon that testimony[,] there can be no relief in the appellate court." *Smith v. Commonwealth*, 56 Va. App. 711, 718-19 (2010) (quoting *Swanson v. Commonwealth*, 8 Va. App. 376, 379 (1989)). Lambert testified to facts that were sufficient to establish the elements of each of the charged offenses. Thus, there can be no relief in this Court.

## II. Bodily injury

Dews next argues that the evidence was insufficient to sustain his strangulation conviction because Lambert's testimony did not establish that she suffered a bodily injury within the meaning of Code § 18.2-51.6. That statute provides that "[a]ny person who, without consent, impedes the blood circulation of another person by knowingly, intentionally, and unlawfully applying pressure to the neck of such person resulting in the wounding or bodily injury of such person is guilty of strangulation." Code § 18.2-51.6. "Bodily injury" refers to "any bodily injury whatsoever and includes an act of damage or harm or hurt that relates to the body; is an impairment of a function of a bodily member, organ, or mental faculty; or is an act of impairment of a physical condition." *Ricks v. Commonwealth*, 290 Va. 470, 479 (2015). "To prove a bodily injury, the victim need not experience any observable wounds, cuts, or breaking of the skin." *Id.* (quoting *English v. Commonwealth*, 58 Va. App. 711, 719 (2011)). Moreover, "[t]he Commonwealth need not present medical testimony to prove bodily injury resulting from strangulation." *Id.* at 480.

There is no dispute that Lambert's testimony established that Dews knowingly, intentionally, and unlawfully applied pressure to Lambert's neck and impeded her blood circulation. Dews contends only that Lambert's red neck and sore throat was insufficiently serious to constitute a bodily injury. In *Ricks*, the Supreme Court found that the victim suffered a bodily injury where "the victim stated that she could not breathe when [the defendant's] hand was on her neck, and she had a red mark on her neck."[5] *Id.* Like Lambert, the victim in *Ricks* did not seek medical attention. *Id.* at 474. In *Wandemberg v. Commonwealth*, 70 Va. App. 124, 136 (2019), this Court found the victim suffered bodily injury where she "testified that her neck hurt and was red after the strangulation." Consistent with those precedents, Lambert's testimony that her neck was red and sore the day after the incident was sufficient to support the trial court's conclusion that Lambert suffered a bodily injury. Therefore, we affirm Dews' strangulation conviction.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*

---

[5] The victim in *Ricks* further testified that "she had bruises on her neck from the incident, but no permanent injuries." 290 Va. at 474. In analyzing whether the victim had suffered a bodily injury, however, the Supreme Court focused on the red mark and made it clear that a victim need not offer proof of bruises. *Id.* at 479.