COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges O'Brien, Causey and Bernhard
Argued at Fredericksburg, Virginia


ROBERTA EDLINA BRANDON

MEMORANDUM OPINION[*] BY
v.        Record No. 0673-24-4                    JUDGE MARY GRACE O'BRIEN
                                                  AUGUST 5, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT PRINCE WILLIAM COUNTY
Kimberly A. Irving, Judge

Taso R. Saunders for appellant.

Lindsay M. Brooker, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, Roberta Edlina Brandon (appellant) was convicted of first-degree

murder under Code § 18.2-32 and use of a firearm in the commission of murder under Code

§ 18.2-53.1.  Appellant alleges that the circuit court erred in excluding her expert witness's

testimony, in speaking to jurors about their inability to reach a verdict, and in giving Jury Instruction

13.  She further contends that the evidence was insufficient to support her conviction for first-degree

murder and that the judge erred by presiding over her trial after accepting her guilty pleas and

allowing her to withdraw the pleas.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)); *see also Al-Saray v. Furr*, __ Va. __,

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

__ (Jan. 16, 2025).  This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'"  *Womack v. Commonwealth*, 82 Va. App. 289, 292 n.1 (2024) (quoting *Konadu v. Commonwealth*, 79 Va. App. 606, 610 n.1 (2024)).

On November 29, 2016, appellant's cousin, Denzel Brandon, failed to pick up his daughter from school as agreed with Nika Williams, the child's mother.  Williams texted Brandon, and the two started arguing.  Williams got her daughter and drove with her boyfriend, Cordrey Jackson, and her mother to a Food Lion grocery store.  Williams texted Brandon that, if he wanted to see his daughter, he should meet them at the Food Lion.

At the store, Williams parked at the front of the parking lot.  While getting out of the car, Williams saw Brandon approaching "very angrily," "punching his hand with his fist, saying, 'Tonight's the night.  My goons are on the way.'"  Williams did not know what he meant and responded, "I'm not dealing with this[,] and I'm calling the police."  Jackson was helping Williams's daughter get out of her car seat, and Brandon yelled at him to "get his fucking hands off of [my] daughter."  Jackson obeyed, and Williams took her daughter and started walking toward the store entrance; she eventually called the police because Brandon "kept trying to take [the child]."  Jackson remained outside.

While waiting in the parking lot, Jackson leaned against the parked car.  Two customers saw a black Mustang stop in front of Jackson; appellant got out of the Mustang and started to "beat[] up" Jackson.  The customers testified that the attack was immediate and unprovoked and that they never saw Jackson "respond physically."  In fact, one customer observed that Jackson backed away and fell to the ground, where appellant "punched him again while his body was still on the ground."  Jackson was able to get away and ran towards the store entrance.

- 2 -

Meanwhile, inside the store, Williams's mother and Brandon argued, attracting the attention of the store manager and other customers. Brandon left the store after Williams's mother told him to "take it up with the boyfriend [Jackson]." The store manager saw Jackson running towards the store; Brandon and Jackson stopped in front of the store and "put [their] fists up" when they were "about eight feet apart," like they were "getting ready to fight." The two never made contact. The black Mustang pulled up again, and appellant jumped out of the passenger's side, holding a gun. Appellant then shot Jackson, who collapsed in the Food Lion doorway and died. An autopsy confirmed that a gunshot wound to Jackson's chest caused his death.

### I. *Guilty Pleas and Withdrawal of Pleas*

Appellant was charged with murder under Code § 18.2-32 and use of a firearm in the commission of murder under Code § 18.2-53.1. Judge Kimberly A. Irving accepted appellant's guilty pleas to both charges on September 30, 2019.

On May 3, 2021, appellant moved to withdraw her guilty pleas over the Commonwealth's opposition. On May 21, Judge Irving heard appellant's motion and continued the case, scheduling another hearing on the issue for June 25. The record contains neither a transcript nor a written statement of facts of the June 25, 2021 hearing. On July 1, Judge Irving subsequently entered an order granting appellant's motion to withdraw her guilty pleas and scheduled a jury trial.

### II. *Notice of Mental Condition Evidence*

Appellant filed a "notice of intent to introduce evidence of [her] mental condition at the time of the offense" under Code § 19.2-271.6. The Commonwealth moved *in limine* to exclude "expert testimony concerning the [appellant's] mental condition." The court denied the motion.

### III. *The Commonwealth's Case*

Judge Irving presided over appellant's trial. In addition to testimony from Williams, the Food Lion manager, and other customers, the Commonwealth introduced surveillance footage and still photographs from the store's security cameras.

Trey Wallace, appellant's friend and owner of the Mustang, also testified. Wallace stated that on November 29, 2016, he picked up appellant in his new Mustang. Appellant and Wallace saw a Facebook post by Brandon that indicated that he was "going through something," and Wallace testified that appellant "was passionate about her cousin[,] so it hurt her to see that." Brandon called appellant, asking her to come to the Food Lion, because Brandon "was having a custody exchange and he wanted her to just be there."

Wallace recalled that when they got to the store, appellant "hopped out and just started fighting" Jackson. He tried to turn around and leave, but appellant "came back and got the gun," which she had in her bag in the passenger seat. Wallace heard "[j]ust one gunshot" and again decided to leave. While driving away, Wallace saw appellant running, and he stopped to "let her get in the car." Once in the car, appellant told Wallace that "she shot [Jackson], but . . . [s]he didn't think it was fatal." Appellant then said, "just go," "[g]o, go, go, go, go." Wallace described appellant as "kind of panicked."

Wallace and appellant stopped in a nearby neighborhood, where appellant disposed of the gun in "some woods." They also parked the car, "dropped [the car keys] on the ground and kicked the dirt over them, got rid of them," before calling and leaving in an Uber. While in the Uber, they saw headlines that confirmed Jackson had died. Appellant went to stay with a friend in Maryland.

At the end of the Commonwealth's case, appellant unsuccessfully moved to strike the first-degree murder charge, arguing that the evidence was insufficient to prove that her "actions were the product of willfulness, premeditation or deliberation."

## IV. *Mental Condition Testimony*

Appellant called Dr. Michael Hendricks as an expert in clinical psychology. Dr. Hendricks testified that he had evaluated appellant by reviewing medical records, police reports, the surveillance footage, and interviewing appellant and her aunt. The Commonwealth objected that Dr. Hendricks could not testify to his "hypothesis" about appellant's mental state, citing "a lack of foundation, hearsay, [and] facts not in evidence." The court agreed that appellant's statements made to Dr. Hendricks would be inadmissible hearsay and would not fall under the medical diagnosis exception, finding that the statements lacked the required reliability because Dr. Hendricks "is a defense expert, [and appellant] has every reason to say whatever she needs to say to get the expert to come on her side."

Further, in response to questioning from the court, Dr. Hendricks acknowledged that he would be unable "to render a professional opinion" "[b]ased solely on [his] personal observation of [appellant]." Similarly, he also did not think he could give an opinion based solely on her demeanor and the security footage. The court excluded Dr. Hendricks's testimony.

## V. *Appellant's Testimony*

Appellant testified in her defense. She told the jury that she and Brandon grew up together and were "very close." Appellant explained that on November 29, 2016, Brandon called her, "sound[ing] a little scared in his voice," and asked her "to watch [his] back" when picking up his daughter. She stated that she was "scared for him[,] . . . [w]orried." Appellant acknowledged that she had only met Jackson "in passing" and that they never "ha[d] any words with one another." According to appellant, when she started hitting Jackson, she was "not even in a right state of mind [and she] was scared for [Brandon]." Appellant also testified that she had planned to get back into the car, but when she saw Brandon and Jackson "going at each other," she "went back to the car and grabbed the gun[] and ran after [Jackson] and shot him." Appellant stated that, during this, she "was

blacked out a little bit." She claimed she had never shot the gun before. Appellant further testified that, when she got back to the car, they "realized that the situation that was happened [sic] was too deep," so they "got rid" of the car and gun.

On cross-examination, appellant admitted that Jackson was her "target" when shooting. She further acknowledged that the first thing she thought afterwards was "where do I go to get away," and that she decided to turn off her phone when leaving the parking lot. Appellant explained that, at Food Lion, she was "afraid for" Brandon and that "when I feel defensive, I get offensive."

Appellant renewed her motion to strike, arguing that the evidence was insufficient to prove premeditation or deliberation necessary for first-degree murder. The court denied the motion.

## VI. *Jury Instruction 13*

While discussing jury instructions, the Commonwealth explained that Jury Instruction 13 was not a model jury instruction and that the language was taken from *Commonwealth v. Perkins*, 295 Va. 323 (2018), and *Fleming v. Commonwealth*, 13 Va. App. 349 (1991). Jury Instruction 13 read as follows: "Intent is the purpose formed in a person's mind which may, and most often must, be inferred from the facts and circumstances in a particular case. Intent may be shown by a person's conduct and by his statements." The court granted the instruction over appellant's objection.

## VII. *Statement to the Jury*

During deliberations, the jury submitted the following question to the court: "What happens if a decision can't be agreed upon. There is just one person not agreeing and 11 of us agree. What are our options if we believe she will not change her mind?" The court then asked counsel if they agreed that it was "time for the *Allen* charge," which they answered in the affirmative.[1] Because it

---

[1] The term "*Allen* charge" refers to *Allen v. United States*, 164 U.S. 492, 501-02 (1896), "the seminal case approving the use of a jury instruction encouraging each juror to reconsider and listen to the conclusions of the other jurors in order to reach a unanimous verdict." *Drexel v. Commonwealth*, 80 Va. App. 720, 746 n.8 (2024).

was around 3:45 p.m., the court asked the jurors "if they think it would be better to recess for the night and come back tomorrow." The court said:

> I know it's exhausting, but I let you know that this could go into the next day. Jury deliberation is, it's tiring and it's hard.
>
> I could give you a charge, we could sit here for another hour, you know, and then decide to come back tomorrow, but if everybody's spent[,] I can also let you go now and have everybody come back tomorrow.

Neither party objected to the court's comment. The jurors decided to stay and deliberate further—they did not receive the *Allen* charge. The jury returned around 4:40 p.m. with a guilty verdict on both charges. The jury was polled, and all jurors indicated their agreement with the verdict.

## ANALYSIS

### I. Evidence of Diminished Capacity under Code § 19.2-271.6

Appellant argues that the court erred in excluding Dr. Hendricks's testimony regarding her diminished capacity, which she contends was admissible "by operation of law" under Code § 19.2-271.6. Although acknowledging that Dr. Hendricks's report included hearsay, appellant contends that the hearsay was admissible as "statements made for the purpose of medical diagnosis or treatment."

We review a trial court's decision to admit or exclude evidence "for an abuse of discretion." *Moore v. Joe*, 76 Va. App. 509, 516 (2023). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Kenner v. Commonwealth*, 71 Va. App. 279, 289 (2019) (quoting *Tynes v. Commonwealth*, 49 Va. App. 17, 21 (2006)), *aff'd*, 299 Va. 414 (2021). But an appellate court "reviews questions of statutory interpretation de novo." *Stafford Cnty. v. D.R. Horton, Inc.*, 299 Va. 567, 574 (2021).

Code § 19.2-271.6(B) provides as follows:

> In any criminal case, evidence offered by the defendant concerning the defendant's mental condition at the time of the alleged offense, including expert testimony, is relevant, is not evidence concerning an ultimate issue of fact, and shall be admitted if such evidence (i) tends to show the defendant did not have the intent required for the offense charged and (ii) is otherwise admissible pursuant to the general rules of evidence. For purposes of this section, to establish the underlying mental condition the defendant must show that his condition existed at the time of the offense and that the condition satisfies the diagnostic criteria for (i) mental illness . . . .

"Mental illness" is defined as "a disorder of thought, mood, perception, or orientation that significantly impairs judgment or capacity to recognize reality." Code § 19.2-271.6(A). In *Shaw v. Commonwealth*, __ Va. __ (April 17, 2025), the Supreme Court explained as follows:

> Code § 19.2-271.6 does not render all evidence related to a defendant's mental condition admissible. Rather, such evidence must (1) demonstrate that the defendant, at the time of the offense, suffered from an "underlying mental condition" as defined in the statute, (2) "tend[] to show the defendant did not have the intent required for the offense charged[,]" and (3) be "*otherwise admissible pursuant to the general rules of evidence.*"

*Id.* at __ (alterations in original) (quoting Code § 19.2-271.6(B)).

"In criminal cases, the opinion of an expert is generally admissible it if is based upon facts personally known or observed by the expert, or based upon facts in evidence." Va. R. Evid. 2:703(b). "[A]n expert witness in Virginia [is] not . . . permitted to base [an] opinion on facts not in evidence" in criminal cases. *Simpson v. Commonwealth*, 227 Va. 557, 565 (1984); *see also Sanders v. Commonwealth*, 282 Va. 154, 159 n.1 (2011).

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c). "If evidence is hearsay, '[it] is inadmissible unless it falls within one of the recognized exceptions' to the rule against hearsay." *Atkins v. Commonwealth*, 68 Va. App. 1, 7-8 (2017) (alteration in original) (quoting *Robinson v. Commonwealth*, 258 Va. 3, 6 (1999)). "Statements made for

purposes of medical diagnosis or treatment and describing medical history, . . . or sensations," qualify for an exception to the hearsay rule. Va. R. Evid. 2:803(4). "[T]he reason statements made for the purpose of medical diagnosis or treatment are admissible despite their nature as hearsay is that patients making such statements recognize that they must provide accurate information to the physician in order to receive effective treatment." *Campos v. Commonwealth*, 67 Va. App. 690, 711-12 (2017). But "reliability is the touchstone for determining admissibility of a patient's out-of-court statements that are made for diagnosis and treatment purposes." *Id.* at 711.

In *Lawlor v. Commonwealth*, 285 Va. 187, 243 (2013), accepting the trial court's explanation that "[a] defendant sitting in jail wants to minimize his time, wants to get probation instead of penitentiary time, depending on what the offense is," the Supreme Court held that an incarcerated defendant's statements to a drug counselor did not fall under the medical diagnosis exception to the hearsay exclusion because they lacked reliability.

Here, appellant wanted Dr. Hendricks to testify under Code § 19.2-271.6 concerning her mental state at the time of the shooting. Dr. Hendricks explained that his opinion would be based on medical records, police reports, surveillance footage, and interviews with appellant and her aunt. Except for the surveillance footage, none of the other relied-upon items were in evidence, which is required for an expert witness to testify in a criminal case. *See Simpson*, 227 Va. at 565. Further, appellant's interview with Dr. Hendricks was hearsay, making it inadmissible. *See* Va. R. Evid. 2:801(c); *Atkins*, 68 Va. App. at 7-8.

Appellant contends that Dr. Hendricks's testimony was admissible under the medical diagnosis exception to hearsay. The court found that appellant's interview with Dr. Hendricks lacked the prerequisite reliability because appellant had "every reason to say whatever she needs to say to get the expert to come on her side." Dr. Hendricks had never treated appellant before the crime, and he acknowledged that he would be unable "to render a professional opinion" based

solely on the security footage and his personal observations of appellant. The statute specifically requires any evidence of the defendant's mental state to be "otherwise admissible pursuant to the general rules of evidence." Code § 19.2-271.6. Because the court's determination that appellant's statements lacked reliability was not plainly wrong and because an expert witness may not testify based on information not in evidence, the court did not err in excluding Dr. Hendricks's testimony.

## II. Improper Statement to the Jury

Appellant argues that the court committed reversable error when interacting with the jury, specifically by saying, "I could give you a charge, we could sit here for another hour, you know." Appellant posits that "the use of the term 'charge' to lay members of the jury, in the context of a murder trial[,] is wholly inappropriate. Under the circumstances, a reasonable person, unfamiliar with the court process could believe that the [c]ourt's terminology could lead to the commencement of criminal prosecution."

"[A] judicial response to a jury question is considered a legal instruction." *Calokoh v. Commonwealth*, 76 Va. App. 717, 729 (2023) (quoting *Ludwig v. Commonwealth*, 52 Va. App. 1, 11 (2008)). "The trial court has 'broad discretion in giving or denying instructions requested,' and [appellate courts] review those decisions under an abuse of discretion standard." *Harris v. Commonwealth*, 83 Va. App. 571, 589 (2025) (alteration in original) (quoting *Barney v. Commonwealth*, 69 Va. App. 604, 609 (2019)).

Appellant acknowledges that she "did not object to the [c]ourt's dialogue" but contends that "the necessity of attaining the ends of justice requires this Court to consider the issue for the first time on appeal."

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except . . . to enable this Court to attain the ends of justice." "Th[is] Court . . . will not consider an argument

- 10 -

on appeal which was not presented to the trial court." *Aponte v. Commonwealth*, 68 Va. App. 146, 163 n.8 (2017) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)). But the ends-of-justice exception to Rule 5A:18 allows this Court to consider an unpreserved argument "in the extraordinary situation where a miscarriage of justice has occurred." *Wandemberg v. Commonwealth*, 70 Va. App. 124, 137 (2019) (quoting *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (en banc)). "Whether to apply the ends[-]of[-]justice exception involves two questions: '(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends[-]of[-]justice provision would result in grave injustice.'" *Conley v. Commonwealth*, 74 Va. App. 658, 682-83 (2022) (quoting *Commonwealth v. Bass*, 292 Va. 19, 27 (2016)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Id.* at 683 (quoting *Holt*, 66 Va. App. at 210).

Here, no "grave injustice" warrants dispensing with the contemporaneous-objection requirement of Rule 5A:18. Appellant asserts that the fact that at least one juror did not agree with the other jurors, necessitating a discussion of a possible *Allen* charge, showed that the language of the court influenced the juror to change her mind "in favor of a guilty verdict." But there is no evidence that it was the court's remark that changed the juror's mind, as opposed to the evidence against appellant. The jury was polled after reaching its verdict, and each juror agreed with the verdict. Nor did any juror express a concern that they were subject to criminal prosecution. We consider the use of the term "charge" in the wider context of the court's statements. In its remark, the court gave the jury a choice between "a charge" or letting them "go now and have everybody come back tomorrow." The jury decided to continue deliberations, indicating that the jurors did not believe their choice to stay and continue deliberations would lead to criminal prosecution. Because no miscarriage of justice occurred, we do not apply the ends-of-justice exception to this waived assignment of error. *See Wandemberg*, 70 Va. App. at 137; *Aponte*, 68 Va. App. at 163 n.8.

### III. Jury Instruction 13

Citing *Terry v. Commonwealth*, 5 Va. App. 167 (1987), appellant argues that the court erred when it gave Jury Instruction 13 because the instruction "was not a model instruction" and "tends to have a single purpose of giving the jury more options to find [appellant] guilty of [f]irst-[d]egree [m]urder by placing an emphasis on the determination of the specific intent to kill the deceased."

We review a court's decision to give a jury instruction for an abuse of discretion. *Harris*, 83 Va. App. at 589. "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Conley*, 74 Va. App. at 674-75 (quoting *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019)).

A jury instruction "may not 'single out for emphasis a part of the evidence tending to establish a particular fact.'" *Terry*, 5 Va. App. at 170 (quoting *Woods v. Commonwealth*, 171 Va. 543, 548 (1938)). But Jury Instruction 13 did not place such undue emphasis on any one piece of evidence. In *Terry*, this Court ruled that an instruction giving examples of circumstances that could be considered to determine intent to distribute drugs, such as quantity, packaging, and location, did not unduly single out evidence because the instruction "did not suggest that specific evidence impelled any particular finding." *Id.* at 171. Likewise, here, the instruction told the jury what it could look at to find intent, such as "a person's conduct" and "his statements," without directing the jury to the conclusion it should draw from those circumstances. Nor does the instruction single out any specific evidence presented at trial. And while the instruction is not a model jury instruction, if it is an "accurate statement of the law," the instruction "shall not be withheld from the jury solely for its nonconformance." Code § 19.2-263.2. Appellant never contended that the instruction inaccurately reflected the law. The court therefore did not abuse its discretion in giving Jury Instruction 13.

IV. Sufficiency of the Evidence

Appellant argues that no reasonable jury could have concluded that she had "the requisite intent to support a conviction for the offense of [f]irst-[d]egree [m]urder."

"In reviewing the sufficiency of the evidence on appeal, this Court will affirm the decision unless the judgment was plainly wrong or the conviction lacked evidence to support it." *Drexel v. Commonwealth*, 80 Va. App. 720, 747 (2024). "In conducting this review, the 'appellate court does not "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt."'" *Id.* (quoting *Commonwealth v. Barney*, 302 Va. 84, 97 (2023)). Instead, "the relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010). "[W]hile no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (second alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

"Premediated murder . . . contemplates: (1) a killing; (2) a reasoning process antecedent to the act of killing, resulting in the formation of a specific intent to kill; and (3) the performance of that act with malicious intent." *Fields v. Commonwealth*, 73 Va. App. 652, 674 (2021) (alteration in original) (quoting *Rhodes v. Commonwealth*, 238 Va. 480, 486 (1989)). "A design to kill may be formed only a moment before the fatal act is committed[,] provided the accused had time to think and did intend to kill." *Giarratano v. Commonwealth*, 220 Va. 1064, 1074 (1980).

"[I]ntent is a state of mind that may be proved by an accused's acts or by his statements and that may be shown by circumstantial evidence." *Rodriquez v. Commonwealth*, 50 Va. App. 667, 673 (2007) (quoting *Wilson v. Commonwealth*, 249 Va. 95, 101 (1995)). "[T]he fact finder may

infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts." *Fleming*, 13 Va. App. at 353 (quoting *Bell v. Commonwealth*, 11 Va. App. 530, 533 (1991)).

"Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. It may be directly evidenced by words[] or inferred from acts and conduct which necessarily result in injury." *Hernandez v. Commonwealth*, 15 Va. App. 626, 631 (1993) (quoting *Christian v. Commonwealth*, 221 Va. 1078, 1081 (1981)). "Malice may be inferred from the 'deliberate use of a deadly weapon unless, from all the evidence, [there is] reasonable doubt as to whether malice existed.'" *Fletcher v. Commonwealth*, 72 Va. App. 493, 507 (2020) (alteration in original) (quoting *Strickler v. Commonwealth*, 241 Va. 482, 495 (1991)). "Whether malice existed is a question for the fact finder." *Robertson v. Commonwealth*, 31 Va. App. 814, 823 (2000).

Here, a plethora of evidence supports the jury's conclusion that appellant intended to kill Jackson. After jumping out of the car at the Food Lion parking lot, appellant began an unprovoked attack on Jackson. Jackson retreated. Appellant then returned to the car to obtain her gun. Although appellant saw Brandon and Jackson squaring up as if they were getting ready to fight, they did not make contact; regardless, appellant shot Jackson.

Appellant now contends that she was "overcome by emotion" when she fired "a single, aimless round" and she "lacked the skill to identify the deceased as a target and further, lacked the intent to cause further harm." This contention is belied by her own trial testimony, where she admitted that Jackson was her "target" when she shot. Appellant also repeatedly testified that she was not "in a right state of mind." But the jury was free to determine that she lacked credibility. *See Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (explaining that "[d]etermining the credibility of witnesses . . . is within the exclusive province of the jury" (second alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993))).

- 14 -

The jury was also free to consider appellant's actions after the incident. *See Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (explaining that the "conduct of an accused after the . . . crime may also be relevant circumstantial evidence of the intent"). Appellant neither called for help nor checked on Jackson; she turned off her cell phone, disposed of the gun and car, told Wallace to "go, go, go," and admitted that she just wanted to "get away." The jury's finding of guilt was not plainly wrong or contrary to the evidence.

## V. Violation of Rule 3A:8(c)(6)

Appellant argues that the judge erred in presiding over appellant's trial after also receiving her guilty pleas and allowing her to withdraw the pleas. Appellant acknowledges that the "record is *devoid* of any objection" but asks us to apply the end-of-justice exception to Rule 5A:18. The ends-of-justice exception to Rule 5A:18 allows this Court to consider an unpreserved argument "in the extraordinary situation where a miscarriage of justice has occurred." *Wandemberg*, 70 Va. App. at 137 (quoting *Holt*, 66 Va. App. at 209).

"In general, '[a] lower court's interpretation of the Rules of th[e Supreme] Court, like its interpretation of a statute, presents a question of law that we review de novo.'" *Bailey v. Commonwealth*, 78 Va. App. 650, 662 (2023) (alterations in original) (quoting *LaCava v. Commonwealth*, 283 Va. 465, 469-70 (2012)). Rule 3A:8(c)(6) provides that "[i]n the event that a plea of guilty . . . is withdrawn in accordance with this Rule, the judge having received the plea may take no further part in the trial of the case, unless the parties agree otherwise." Importantly, "judicial officers are presumed to know and follow the law." *Echavarry v. Commonwealth*, 60 Va. App. 177, 188 n.5 (2012).

Rule 5A:8 requires an appellant to file any necessary transcripts of the proceedings in the trial court within 60 days after entry of the final judgment. "When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of

appellate issues, any assignments of error affected by such omission will not be considered." Rule 5A:8(b)(4)(ii). *See also Smith v. Commonwealth*, 281 Va. 464, 470 (2011).

It is undisputed that the same judge heard appellant's guilty pleas and presided over the hearing to withdraw the pleas as well as the subsequent trial. But appellant failed to file a transcript of the hearing held on June 25, 2021, during which the judge decided to grant appellant's motion to withdraw her guilty pleas. Because a judge is presumed to "know and follow the law," *Echavarry*, 60 Va. App. at 188 n.5, and because Rule 3A:8(c)(6) allows a judge to preside over a defendant's trial after receiving the plea when the parties agree to it, we must presume that the parties agreed that the same judge would preside over appellant's trial after receiving her pleas. We also cannot apply the ends-of-justice exception when we do not have the necessary transcripts to determine whether a "a miscarriage of justice has occurred." *Wandemberg*, 70 Va. App. at 137 (quoting *Holt*, 66 Va. App. at 209); *see also* Rule 5A:8(b)(4)(ii). We therefore do not consider this assignment of error. *See* Rule 5A:8(b)(4)(ii).

## CONCLUSION

The court did not abuse its discretion in excluding Dr. Hendricks's expert opinion and granting Jury Instruction 13. The court made no erroneous statements to the jury when determining whether they would continue deliberations or return the next day. Further, the evidence was sufficient for the jury to find the elements of first-degree murder. Finally, because appellant did not provide a transcript or a statement of facts in lieu of a transcript, we cannot consider her contention that the court erred in presiding over the trial after accepting appellant's guilty pleas. For these reasons, we affirm.

*Affirmed.*