COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Chaney, Frucci and Senior Judge Annunziata
Argued by videoconference


STEVEN OMAR ORELLANA
                                                    MEMORANDUM OPINION* BY
v.         Record No. 1280-23-4                     JUDGE VERNIDA R. CHANEY
                                                        APRIL 22, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

Brandon R. Sloane (Andrew M. Stewart; Dennis, Stewart &
Krischer, PLLC, on briefs), for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


A jury found the appellant, Steven Orellana, guilty of raping a co-worker, D.C.,[1] in

violation of Code § 18.2-61(A)(i).  On appeal, Orellana challenges the sufficiency of the

evidence, the admission of certain items of evidence, and statements made by the prosecutor in

his closing arguments at trial and sentencing.  He also argues his conviction should be set aside

because the attorney who represented him at trial did so in violation of Code

§ 19.2-163.01(A)(8).  Finding no error in the trial court's rulings, this Court affirms.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] We refer to the complainant by her initials to maintain her privacy.

Orellana and D.C. met when they were employed at an independent school in the District of Columbia. He worked in the IT department, and she taught music. They developed a close friendship, which became a romantic relationship in March 2019. D.C. willingly engaged in kissing, oral sex, and digital penetration with Orellana, but she told him that she was not willing to have vaginal intercourse. She viewed intercourse as more significant than the other forms of physical intimacy and also thought it was inappropriate because they worked together.

On May 31, 2019, D.C. and Orellana went to his apartment in Alexandria after work. They drank alcohol and kissed in the living room. D.C. decided to take a shower "to be fresh" in case they wanted to engage in sexual activities other than intercourse. After her shower, D.C. wore nothing but an oversized t-shirt of Orellana's because she did not have any clean clothes with her. D.C. and Orellana began "making out" in the bedroom while watching a movie. When Orellana began unbuckling his pants, D.C. told him that she did not want to have sexual intercourse with him. He responded, "I heard you," but continued to unbuckle his pants. D.C. repeated that she did not want to have sex. Orellana then inserted his penis into D.C.'s vagina while holding her hands against the bed. Although she "squirm[ed] and wiggl[ed]," she could not move away from him. D.C. felt Orellana's penis go into her vagina, but she did not believe he ejaculated. After a "short" time, "maybe five minutes," Orellana removed his penis. D.C. grabbed her cell phone and left the apartment. Orellana followed her to the parking garage, but she drove away without talking to him.

D.C. called her brother and her best friend, but both were out-of-state. She then sent a text message to another friend, Cambria Conley:

---

[2] The facts are stated "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

> I'm sorry I know we aren't THIS close but I don't know what else
> to do because my best friend is in Dallas[.] I just experienced a
> rape and I don't want to report it but I think I should go to the
> doctors right but I'm scared they will ask for me to file[.] I don't
> know what to do[.] I'm gonna go to the doctor[.]

Ms. Conley responded that D.C. should go to the doctor and would not be forced to file a police report. D.C. said that she was embarrassed for putting herself in a situation like that and felt a lot of guilt and shame. Ms. Conley agreed to meet D.C. at the hospital. D.C. met with a forensic nurse and underwent several different tests. D.C. filed the initial report anonymously because she was unsure that she wanted to report the incident to the police.

After the rape, appellant sent D.C. several text messages expressing regret for his conduct. She eventually agreed to talk to him while they were at the school. D.C. recorded the conversation with her mobile phone without Orellana's knowledge because she wanted to have proof of the offense. Orellana acknowledged during the conversation that he knew D.C. had not wanted to have intercourse but "thought [she was] going to be okay with it." Several weeks later D.C. filed a police report.

At trial, Paulette Dendy, a sexual assault nurse examiner, testified as an expert in forensic nursing that she examined D.C. on June 1, 2019. D.C. told her that Orellana's penis penetrated her vagina while he held her down on the bed. Dendy observed that several areas of D.C.'s external genitalia were "irritated" or "tender." She acknowledged that sexual activity other than intercourse could have caused inflammation of these areas, but she testified that nothing in her examination was inconsistent with penetration having occurred. Dendy also testified that she saw no signs of bruising on D.C.'s arms or wrists.

Kari Dodd testified as an expert in forensic DNA analysis. She said that Orellana could not be eliminated as a contributor to the DNA found on D.C.'s left breast. Male DNA was found on D.C.'s external genitalia, but the sample was not large enough to compare with Orellana.

Dodd stated that she could not determine if vaginal penetration had occurred because no male DNA was detected in the vaginal cervical sample from D.C. that was analyzed. Dodd explained that whether ejaculation occurred would affect the presence of DNA in the vagina and the presence of more female DNA could mask male DNA. She testified that DNA could be lost through contact if there was "a lot of movement [after intercourse] versus being prone or just laying still" and that females lost DNA through normal drainage of the vagina. The fact that no male DNA was detected did not mean it was not present. Dodd also said that male DNA might be present in D.C.'s other vaginal cervical sample that was not analyzed.

Orellana testified at trial that on May 31, 2019, he and D.C. engaged in consensual oral sex and "fingering" both before and after she took a shower. He said they rubbed their genitalia together but did not have sexual intercourse. He said that she did not tell him to stop what he was doing. According to Orellana, D.C. fell off the edge of the bed while her legs were on his shoulders. She was embarrassed and left the apartment when he laughed at her. He said that he was "crushed" when he tried to contact her the next day and she did not respond.

The jury found Orellana guilty of rape. He moved to set aside the verdict, challenging the sufficiency of the evidence and instances of trial error, including the admission of several items of evidence, arguments made by the prosecutor, and representation by his retained attorney. The trial court denied the motion and also denied the motion to reconsider. The court sentenced Orellana to 25 years in prison, with 15 years suspended.

ANALYSIS

Orellana raises 13 assignments of error, which may be grouped into three categories: (1) sufficiency of the evidence; (2) trial court error involving the admissibility of certain items of evidence and closing arguments by the prosecutor; and (3) statutory interpretation of Code § 19.2-163.01(A)(8).

I.  The evidence sufficiently proved rape.[3]

Orellana contends that the evidence did not prove (1) his penis penetrated D.C.'s vagina, and (2) any penetration occurred against her will or without her consent.  He also argues that the Commonwealth's evidence adduced during the case-in-chief was in equipoise as a matter of law.

When the sufficiency of evidence to support a conviction is challenged, an appellate court views the evidence in the light most favorable to the Commonwealth, the party prevailing at trial.  *Wandemburg v. Commonwealth*, 70 Va. App. 124, 132-33 (2019).  "Viewing the record through this evidentiary prism requires [the reviewing Court] to 'discard the evidence of the accused in conflict with that of the Commonwealth and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'"  *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018)).  The trial court's judgment "is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it."  *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (quoting *Perkins*, 295 Va. at 327).  The "relevant question" is not whether the appellate court "believes that the evidence at trial established guilt beyond a reasonable doubt," but "whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Commonwealth v. Moseley*, 293 Va. 455, 462-63 (2017) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

A conviction for rape requires proof that the defendant had "sexual intercourse with a complaining witness . . . or causes a complaining witness . . . to engage in sexual intercourse . . . and such act is accomplished (i) against the complaining witness's will, by force, threat or intimidation of or against the complaining witness or another person . . . ."  Code § 18.2-61(A)(i).  Penetration of a vagina by a penis "is an essential element of the crime of rape,"

---

[3] Assignments of Error I – III.

and the crime is sufficiently proved "however slight the entry may be." *Johnson v. Commonwealth*, 259 Va. 654, 682 (2000) (quoting *Moore v. Commonwealth*, 254 Va. 184, 186 (1997)). Further, "a conviction for rape and other sexual offenses may be sustained solely on the uncorroborated testimony of the victim." *Poole v. Commonwealth*, 73 Va. App. 357, 368 (2021) (quoting *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005)). "[B]ecause sexual offenses are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished." *Id.* at 369 (quoting *Wilson*, 46 Va. App. at 88).

D.C. consistently testified that Orellana ignored her repeated statements that she did not want to have sexual intercourse and inserted his penis into her vagina while holding her down on the bed. "The credibility of the witnesses and the weight accorded the evidence are matters *solely for the fact finder* who has the opportunity to see and hear the evidence as it is presented." *Id.* at 368 (quoting *Perkins*, 295 Va. at 328). An appellate court, "knowing nothing of the evidence or witness, except as it appears on the paper . . . [is] incompetent to decide on the credibility of the testimony." *Lucas v. Commonwealth*, 75 Va. App. 334, 342-43 (2022) (alterations in original) (quoting *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011)). The fact finder's credibility determination may only be disturbed on appeal "if this Court finds that [the witness'] testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) (alteration in original) (quoting *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011)). Testimony will be incredible if it is "so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ." *Id.* (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

Orellana argues that D.C.'s testimony was not credible because her direct and cross-examination testimony was inconsistent regarding where the sexual activity began. The testimony elicited on direct examination focused on the events that happened in the bedroom after D.C. took a shower. On cross-examination, she said she remembered kissing Orellana in the living room but did not recall any "fingering" there. "Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Id.* A reasonable reading of D.C.'s testimony does not show it to be inconsistent.[4] The jury accepted her testimony and rejected Orellana's claim that she fabricated the complaint because he laughed at her when she fell off his bed. The jury's finding is not "unworthy of belief." *Id.* Thus, D.C.'s testimony alone was sufficient to convict Orellana of rape pursuant to Code § 18.2-61. *Poole*, 73 Va. App. at 368.

Even so, the Commonwealth presented evidence corroborating D.C.'s testimony. D.C. immediately texted a friend that she had been raped. D.C. told sexual assault nurse examiner Dendy the day after the offense that Orellana's penis had penetrated her vagina, and she also reported the offense to the police. A sexual assault victim's complaint made recently after the offense was committed is admissible corroborating evidence of the offense. *See* Code § 19.2-268.2; *Terry v. Commonwealth*, 24 Va. App. 627, 633 (1997).

Orellana sent D.C. text messages from May 31, 2019, until June 14, 2019. In these messages he said, "I want to apologize for offending and disrespecting you[,]" and "I understand and respect your decision to not speak to me again." He also said, "If you ever decide to be open to having a dialogue . . . I'll be ready, willing and able to listen and hear you out." Orellana also made incriminating statements in the conversation D.C. recorded. When D.C. told Orellana she

---

[4] As another example of D.C.'s alleged inconsistent testimony, Orellana argues that she said she "'just left the apartment'" after the rape "but also [said] she ran from the room." D.C.'s statements were a matter of semantics, which does not make them inconsistent.

did not understand why he ignored her statements that she did not want to have sex with him, he responded, "It was the environment." He also said he thought she would "be okay with it," even though she had said "'no.'" Orellana's statements served as an adoptive admission of rape against D.C. *See Lynch v. Commonwealth*, 272 Va. 204, 209 (2006) ("A party may manifest adoption of a statement made by another in any number of ways, including words, conduct, or silence.").

Additionally, D.C.'s testimony was corroborated in part by the forensic evidence. Paulette Dendy testified as an expert in forensic nursing that her examination of D.C. on June 1, 2019, showed "irritated" or "tender" areas on D.C.'s external genitalia and that nothing was inconsistent with penetration having occurred. Kari Dodd testified as an expert in forensic DNA analysis that while she could not state conclusively that penetration had occurred, the fact that male DNA was not detected in D.C.'s vaginal cervical sample did not mean DNA was not present. She explained that female DNA could mask male DNA and that other factors, such as whether ejaculation occurred, affected the presence of DNA.

Relying on *Moore v. Commonwealth*, Orellana also argues his conviction should be reversed because the evidence was in equipoise as a matter of law. In *Moore*, the Commonwealth had elicited testimony from the young victim that the defendant had put his penis both "in" and "on" her vagina. 254 Va. at 189. Holding that the "evidence was in a state of equipoise on an essential element of the crime" and thus failed to prove penetration as a matter of law, the Supreme Court reversed the conviction. *Id.* at 189-91.

Orellana's case is distinguishable from *Moore*. The prosecutor in *Moore* "presented, from the mouth of the victim, two different accounts of the essential facts relating to a crucial element of the crime." *Id.* at 189. In Orellana's case, D.C.'s testimony unequivocally established that Orellana inserted his penis into her vagina. Although she agreed that he *also*

may have rubbed his penis on the outside of her vagina, she steadfastly stated this was a separate act from the rape she described. Further, unlike *Moore*, medical and forensic evidence corroborated her testimony. *See id.* at 191 (noting the only evidence in the case was the victim's testimony). D.C.'s allegedly inconsistent testimony did not place the evidence in equipoise. Rather, her credibility was a matter for the jury to decide, and the jury accepted her testimony. Therefore the evidence in this case was sufficient to prove that Orellana raped D.C.

II. The trial court properly denied the motion to set aside the verdict.[5]

Orellana contends that the trial court should have set aside the verdict because the court erred in admitting D.C.'s text messages with Cambria Conley, the audio recording of D.C.'s conversation with Orellana, and certain testimony of the forensic scientist, Kari Dodd. He also argues the verdict should have been set aside because the prosecutor made improper statements in his closing rebuttal argument in the guilt phase and his argument at sentencing.

As pertinent to these assignments of error, Rule 3A:15(b) provides that a trial court may set aside a jury's verdict "for error committed during the trial." An appellate court will reverse a refusal to set aside a verdict "'only if that verdict was "plainly wrong or without evidence to support it."'" *Brown v. Commonwealth*, 68 Va. App. 746, 795 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

III. The challenged evidence was variously admissible or admitting it was harmless error.

"The determination of the 'admissibility of evidence is within the discretion of the trial court,' and an appellate court will not reject such decision absent an 'abuse of discretion.'" *Williams v. Commonwealth*, 71 Va. App. 462, 487 (2020) (quoting *Tirado v. Commonwealth*, 296

---

[5] Assignments of Error IV – IX. Orellana did not object when these issues arose at trial but raised them in a motion to set aside the verdict, which the trial court denied. We assume without deciding that the issues were preserved for appeal. *See Abdo v. Commonwealth*, 64 Va. App. 468, 473 n.1 (2015) (holding that a decision on the merits was "the best and narrowest ground" for resolving the case and declining to apply Rule 5A:18).

Va. 15, 26 (2018)). An appellate court reviews the admissibility of evidence "in the light most favorable to the Commonwealth, as the prevailing party, including all reasonable and legitimate inferences that may properly be drawn from it." *Jenkins v. Commonwealth*, 71 Va. App. 334, 342 (2019) (quoting *Henderson v. Commonwealth*, 285 Va. 318, 329 (2013)). "When evaluating whether a trial court abused its discretion, the appellate court 'considers only whether the record fairly supports the trial court's actions.'" *Davis v. Commonwealth*, 73 Va. App. 500, 507 (2021) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). An abuse of discretion occurs "only in cases in which 'reasonable jurists could not differ' about the correct result." *Williams*, 71 Va. App. at 487 (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)).

"The proponent of the evidence bears the burden of establishing . . . the facts necessary to support its admissibility." *Church v. Commonwealth*, 71 Va. App. 107, 122 (2019) (alteration in original) (quoting *Perry v. Commonwealth*, 61 Va. App. 502, 509 (2013)). "The measure of the burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance of the evidence." *Atkins v. Commonwealth*, 68 Va. App. 1, 9 (2017) (quoting *Bloom v. Commonwealth*, 262 Va. 814, 821 (2001)). "Once this threshold for proving admissibility has been met, any gaps in the evidence are relevant to the trier of fact's assessment of its weight rather than its admissibility." *Church*, 71 Va. App. at 122-23.

A. *D.C.'s Text Messages to Conley*

Code § 19.2-268.2 provides that evidence of a recent complaint is admissible as an exception to the hearsay rule. The complaint is not considered as "independent evidence of the offense, but for the purpose of corroborating the testimony of the complaining witness." Code § 19.2-268.2. Only the fact that the complaint was made is admissible, not its details. *Mayberry v. Commonwealth*, 66 Va. App. 93, 99 (2016). "[T]he "scope of admission rests with the sound discretion of the trial court." *Woodard v. Commonwealth*, 19 Va. App. 24, 27 (1994).

- 10 -

D.C.'s text messages to Conley were properly admitted at trial as a recent complaint. Only the first message mentioned "rape." D.C. told Conley, "I just experienced a rape and I don't want to report it but I think I should go to the doctors right but I'm scared they will ask for me to file." Subsequent messages concerned Conley offering succor to D.C. The messages did not give Orellana's name, the location where the rape occurred, or any other details about the rape. Because the messages mentioned only that a rape occurred, they were properly admitted under Code § 19.2-268.2. Accordingly, the trial court did not err in denying the motion to set aside the verdict on this ground. *See* Rule 3A:15(b); *see also Brown*, 68 Va. App. at 795.

B. *Audio Recording of D.C.'s Conversation with Orellana*

Several weeks after the rape, D.C. agreed to talk with Orellana. Their conversation took place at three locations on the school's campus as they moved from place to place to maintain privacy. D.C. used her mobile phone to record the conversation and began a new recording at each location. The recording was played at trial.

Orellana argues that the Commonwealth did not lay a proper foundation for admitting the recording because it was not a single conversation. He also contends that parts of the conversation were not recorded because each of the three recordings began "mid-conversation."

Before a recording can be admitted into evidence, it must be authenticated or identified "by evidence sufficient to support a finding that the thing in question is what its proponent claims." Va. R. Evid. 2:901; *see Baez v. Commonwealth*, ___ Va. ___ (Dec. 19, 2024). D.C. recorded the conversation; she testified that the voices heard were herself and Orellana and that the recordings were "true and accurate." She said the conversation ended when the third recording ended, and she denied that any parts were missing. A recording "which is verified by the testimony of a witness as fairly representing what that witness has observed is admissible in evidence . . . ." *Wilson v. Commonwealth*, 29 Va. App. 236, 239 (1999) (quoting *Ferguson v.*

- 11 -

*Commonwealth*, 212 Va. 745, 746 (1972)). Further, this Court said in *Wilson* that where "a witness with knowledge testified that the [recording] was what it claimed to be, the Commonwealth did not need to prove the accuracy of the process that produced it." *Id.*

The Commonwealth established by a preponderance of the evidence that the audio recording accurately captured the conversation between D.C. and appellant. The breaks in the recording as they moved around the school campus did not make the entire recording inadmissible. Rather, "any gaps in the evidence" affected its "weight rather than its admissibility." *Church*, 71 Va. App. at 122-23. The trial court did not abuse its discretion in admitting the recording or in denying the motion to set aside the verdict on this ground. *See* Rule 3A:15(b); *see also Brown*, 68 Va. App. at 795.

C. *Expert Testimony of Forensic Examiner*

During her testimony, the DNA forensic examiner, Kari Dodd, stated that male DNA possibly could be present on another vaginal cervical sample from D.C. that was not analyzed. Orellana argues that Dodd's statement was not admissible because it was speculative and not based on facts in evidence.

"A trial court's admission of expert testimony is in the sound discretion of the trial court." *Payne v. Commonwealth*, 277 Va. 531, 542 (2009). "The purpose of expert testimony is to assist the trier of fact in understanding the evidence." *Watson v. Commonwealth*, 298 Va. 197, 205 (2019). But expert testimony is not admissible if it is based on assumptions that lack a sufficient factual basis. *Payne*, 277 Va. at 542-43. Dodd's expert testimony was speculative and, therefore, admitting it was error. Even so, that error was harmless.

Dodd testified that D.C.'s external genitalia sample contained male DNA. She also said that she could not determine whether vaginal penetration had occurred because no male DNA was detected on D.C.'s analyzed vaginal cervical sample. She further said that male DNA could

be present even if it was not detected. Dodd explained there were several factors, such as failure to ejaculate and masking of male DNA by the presence of more female DNA, that could affect the detection of male DNA. Dodd stated that male DNA might be present in another vaginal cervical sample from D.C. that was not analyzed, but she acknowledged that male DNA "could also not be" in that sample.

Testimony about what evidence *may or may not* be available elsewhere, or that evidence *might* have been obscured in a given sample, is speculative by definition. "The word 'may' is insufficient to prove causation. 'May' is defined as 'to express possibility.'" *Farmington Country Club, Inc. v. Marshall*, 47 Va. App. 15, 28 (2005) (quoting *Webster's College Dict.* 811 (2d ed. 1997)). "A medical opinion based on a 'possibility' is irrelevant, purely speculative and hence, inadmissible." *Id.* (quoting *Spruill v. Commonwealth*, 221 Va. 475, 479 (1980)).

However, any error in admitting Dodd's testimony was harmless:

> [w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any other defect, imperfection, or omission in the record, or for any error committed on the trial.

Code § 8.01-678. "In a criminal case . . . in order to determine whether there has been 'a fair trial on the merits' and whether 'substantial justice has been reached,' [this] [C]ourt must decide whether the alleged error substantially influenced the jury. If it did not, the error is harmless." *Clay v. Commonwealth*, 262 Va. 253, 259 (2001). Even if the challenged testimony from Dodd was excluded, the evidence adduced against Orellana was substantial. The trial court found that D.C. credibly testified directly against Orellana. D.C.'s testimony was corroborated with several text messages—some from Orellana. Her testimony was also corroborated by other, admissible, expert testimony from Dendy and Dodd. Orellana himself made self-incriminating statements to D.C., as recorded by her and admitted into evidence. Given the totality of evidence establishing Orellana's

- 13 -

guilt, we cannot say that erroneously admitting Dodd's speculative testimony "substantially influenced the jury."

### D. *The prosecutor's arguments were not improper.*

Orellana contends that the prosecutor made an improper rebuttal argument in the guilt phase regarding the DNA expert's testimony. He also argues that the prosecutor's argument at the sentencing hearing was improper.

Whether a closing argument is appropriate "is committed to the discretion of the trial court." *King v. Commonwealth*, 77 Va. App. 748, 762 (2023) (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 639 (1997)). The court's ruling will not be disturbed on appeal unless the record affirmatively shows an abuse of discretion that prejudiced the defendant. *See id.*

### 1. Prosecutor's Rebuttal Argument

In her closing argument in the guilt phase, defense counsel argued there was no physical proof of penetration because no male DNA was found in D.C.'s vaginal cervical sample. In rebuttal, the prosecutor stated that the DNA evidence corroborated D.C.'s testimony that sexual activity had occurred but could not determine whether intercourse had happened. He continued, "The best we get is that there might be male DNA inside the vaginal area, but [the evidence] doesn't exclude it." Orellana contends that the rebuttal argument allowed the jury to conclude that DNA was present, even though not detected, and to wrongfully find he was guilty of rape.

A prosecutor may "argue the evidence and all reasonable inferences from the evidence" in his closing argument. *Duncan v. Commonwealth*, 2 Va. App. 717, 730 (1986). Assuming that it was error for the prosecutor to rely on expert testimony that was erroneously admitted, it was harmless error. As explained above, the other evidence admitted at trial was substantial enough

- 14 -

to establish Orellana's guilt beyond a reasonable doubt. Accordingly, this Court will not reverse on the basis of the prosecutor's statements during rebuttal argument.

2. Prosecutor's Arguments at Sentencing

The prosecutor argued at sentencing that "the defendant grievously wronged [D.C.]" and "stole something from her and harmed her in a way that will not easily be repaired." Noting the impact of the incident on Orellana's life, he said that "his choice will also impact [D.C.] now and in the future." Orellana contends that the argument was improper because D.C. declined to participate in the hearing and the prosecutor should not have attributed any statements to her.

The trial court's allowance of a prosecutor's statements at sentencing is reviewed for an abuse of discretion. *Avent v. Commonwealth*, 279 Va. 175, 204 (2010). It is not improper for a prosecutor to comment on the impact of a crime on a crime victim. *See Andrews v. Commonwealth*, 280 Va. 231, 303 (2010) (the prosecutor's comments at sentencing, "What capital punishment says to those folks is we take your loss seriously. . . . We know that these victims are filled with rage and pain" were "proper comment[s] on victim impact as it relates to . . . sentencing"). Nor was D.C. under any obligation to be at the sentencing hearing to make those statements. Moreover, Orellana referred to the victim impact of his actions in his closing argument. Orellana stated that harm to a victim was a significant factor to consider in sentencing and that serious injury to a victim would "undoubtedly have lingering effects." The trial judge who presided at sentencing was "uniquely capable because of his training, experience and judicial discipline to disregard potentially prejudicial argument during the mental process of adjudication." *Williams v. Commonwealth*, 234 Va. 168, 182 (1987). No reversible error occurred in this instance. *See* Rule 3A:15(b); *see also Brown*, 68 Va. App. at 795.

Orellana also contends that the prosecutor's argument that Orellana did not have a right to commit perjury when he testified at trial and showed no remorse penalized him for having a

jury trial and choosing to testify. He asserts that the prosecutor's argument led the trial court to not sentence him below the guidelines, as he had requested.[6]

A criminal defendant who chooses to testify in his own behalf is not accorded any special dispensation but "loses his character as a party, becomes a mere witness, and may be examined as fully as any other witness." *Drumgoole v. Commonwealth*, 26 Va. App. 783, 786 (1998) (quoting *Smith v. Commonwealth*, 182 Va. 585, 598 (1944)); *see* Code § 19.2-268 (defendant may be cross-examined as any other witness). When a defendant testifies on his own behalf, "his character for truthfulness is called into question." *Argenbright v. Commonwealth*, 57 Va. App. 94, 99 (2010). The fact that he has been convicted of perjury "may be shown in evidence to affect his credit." Code § 19.2-269. The trier of fact is "free to believe or disbelieve, in part or in whole, the testimony of any witness." *Washington v. Commonwealth*, 75 Va. App. 606, 616 (2022) (quoting *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004)). The fact finder also is "at liberty to discount [a defendant's] self-serving statements as little more than lying to conceal his guilt." *Poole*, 73 Va. App. at 369 (quoting *Becker v. Commonwealth*, 64 Va. App. 481, 495 (2015)). In finding Orellana guilty, the jury discredited his testimony. The prosecutor's perjury comment was not improper argument at the sentencing hearing or grounds for setting aside the verdict.[7] *See* Rule 3A:15(b); *see also Brown*, 68 Va. App. at 795.

The prosecutor's argument that Orellana showed no remorse was also not improper. This Court has held that such evidence is permissible and appropriate for a trial court to consider at

---

[6] Orellana's guidelines recommended that he be sentenced to 7 years of incarceration on the low end, and 22 years and 8 months on the high end. The prosecutor asked the trial court to sentence Orellana to 30 years in prison with 15 suspended. The court sentenced him to 25 years with 15 suspended.

[7] Orellana's reliance on *Craddock v. Commonwealth*, 16 Va. App. 402, 405 (1993), to set aside the verdict is misplaced because that case held that the remedy for a sentencing error is a new sentencing hearing, not a new trial.

sentencing. *Smith v. Commonwealth*, 27 Va. App. 357, 360-63 (1998) (holding that "a trial court may consider a defendant's lack of remorse at sentencing, even when the defendant has chosen to enter an *Alford* plea"). Lack of remorse is relevant to determining whether a defendant would commit similar criminal offenses in the future. *See id.* at 361; *Thomas v. Commonwealth*, 244 Va. 1, 23 (1992).

Finally, our caselaw is well established that sentencing guidelines are not mandatory, and a trial court has discretion to sentence below or above the guidelines. *See, e.g.*, *Thomas v. Commonwealth*, 82 Va. App. 80, 124 (2024) (en banc); *Jett v. Commonwealth*, 34 Va. App. 252, 256 (2001). Failure to follow the guidelines is not reviewable on appeal. Code § 19.2-298.01(F). The fact that Orellana received a sentence he did not like is not a basis for setting aside the verdict. *See* Rule 3A:15(b); *see also Brown*, 68 Va. App. at 795. The trial court therefore did not abuse its discretion by permitting the prosecutor's arguments at sentencing.

E. *The trial court did not err in denying the motion to set aside the verdict based on the alleged violation of Code § 19.2-163.01(A)(8).[8]*

Orellana argues that his counsel's representation of him at trial constituted a per se violation of statute because his counsel was simultaneously engaged in the private practice of law *and* employed as a public defender. In August 2019, Orellana retained Ms. Tracy Lenox, a criminal defense attorney with the firm of Nicholas Zauzig, P.C., and the case was set for trial in January 2020. Ms. Lenox became the Public Defender for Prince William County in May 2020 and remained in that position at the time of Orellana's trial in January 2022. Orellana asserts that the statute establishing the Virginia Indigent Defense Commission (VIDC), Code § 18.2-163.01, forbade Ms. Lenox to be both. Orellana contends that this statutory violation requires that he be granted a new trial.

---

[8] Assignments of Error X – XIII.

Issues of statutory interpretation are reviewed de novo. *Esposito v. Va. State Police*, 74 Va. App. 130, 133 (2022). Code § 19.2-163.01(A)(7) and (8) grant the VIDC the authority to maintain public defender offices established by the General Assembly and to appoint a public defender for each office "who shall devote his full time to his duties and not engage in the private practice of law." Code § 19.2-163.01(A)(8). The statute specifies that the VIDC has "sole responsibility for the powers, duties, operations, and responsibilities set forth in this section." Code § 19.2-163.01(A). Those powers include establishing "guidelines for the removal of an attorney from the official list of those qualified to receive court appointments . . . ." Code § 19.2-163.01(A)(4).

The plain language of Code § 19.2-163.01(A)(8) precludes a public defender from engaging in the private practice of law, but it does not follow that in all cases a violation of the statute automatically results in reversing a defendant's conviction. This Court finds that Code § 19.2-163.01 does not provide Orellana relief in the trial court or on direct appeal of his conviction. To start, Code § 19.2-163.01(A) expressly designates "sole . . . power[]" and "responsibilit[y]" for enforcing the provisions of that statute to the VIDC. Further, Code § 19.2-163.01 does not specify a remedy or provide an explicit private mechanism of enforcement. In the absence of explicit legislative authorization of a cause of action, we are disinclined to find one ourselves. *See Lafferty v. Sch. Bd. of Fairfax Cnty.*, 293 Va. 354, 362 (2017) ("When a statute is silent . . . we have no authority to infer a statutory private right of action without demonstrable evidence that the statutory scheme necessarily implies it." (alteration in original) (quoting *Cherrie v. Virginia Health Servs.*, 292 Va. 309, 315 (2016))); *see also Spanos v. Taylor*, 76 Va. App. 810, 824 n.9 (2023) ("Virginia law . . . establishes that attorney disciplinary rules do not provide a basis for a private cause of action, with respect to a recovery for damages.").

Compare this statute to the other statutes in the same chapter—which *do* provide mechanisms for removing various officials *but also* do not give a private litigant the right to use those mechanisms. The VIDC statute is in Chapter 10 of Title 19.2, entitled "Disability of Judge or Attorney for Commonwealth; Court-Appointed Counsel; Interpreters; [and] Transcripts." Article One of that chapter governs the "Disability of [a] Judge." Code §§ 19.2-153 and -154. "When the judge of a circuit court" cannot preside over a trial, "he shall enter the fact of record and the *clerk of court* shall at once certify this fact to the *Chief Justice of the Supreme Court* and thereupon another judge shall be appointed . . . ." Code § 19.2-153 (emphases added). Article Two governs "Disability of [an] Attorney for [the] Commonwealth." Code §§ 19.2-155 and -156. If the Commonwealth's Attorney is disqualified from a case or is absent due to illness, "then upon notification by such attorney for the Commonwealth, or upon the certificate of his attending physician, or the clerk of court, which fact shall be entered of record, *the judge of the circuit court* shall appoint" a new Commonwealth's Attorney. Code § 19.2-155 (emphasis added).

Code § 19.2-163.01 does not have a similar mechanism. Given where in the Code that statute finds itself, the lack of a mechanism for removing a defense attorney reflects a choice by the legislature to reserve that mechanism to the VIDC. *See Norfolk Dep't of Hum. Servs. v. Goldberg*, 81 Va. App. 667, 681 n.5 (2024) ("Under the doctrine of in pari materia, 'statutes are considered as if they constituted but one act, so that sections of one act may be considered as though they were parts of the other act, as far as this can reasonably be done.'" (quoting *Morgan v. Commonwealth*, 301 Va. 476, 481 (2022))); *Navy Fed. Credit Union v. Lentz*, 78 Va. App. 250, 258 (2023) ("The use of specific language in one section of [a] statute yet omitted in another part of the statute is presumed to be intentional."). Because Code § 19.2-163.01 cannot

be enforced by criminal defendants at trial or on direct appeal, the trial court did not err in failing to grant Orellana's motion to set aside the verdict.

CONCLUSION

For the foregoing reasons, this Court affirms Orellana's conviction.

*Affirmed.*